EXHIBIT A-1

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

DISNEY ENTERPRISES, INC.,
LUCASFILM LTD. LLC, and
LUCASFILM ENTERTAINMENT
COMPANY LTD. LLC,

         *Plaintiffs,*

       -against-

THE SECRET DIS GROUP LLC,
POPSELLA INC., CHRISTOPHER B.
MARTIN, and HANNAH MARTIN,

         *Defendants.*

Case No.: 6:22-cv-02417-RBD-LHP

## PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DEFENDANT THE SECRET DIS GROUP LLC

In accordance with Federal Rule of Civil Procedure 34, Plaintiffs, Disney Enterprises, Inc., Lucasfilm Ltd. LLC, and Lucasfilm Entertainment Company Ltd. LLC, by and through their undersigned attorneys, hereby direct their First Requests for Production of Documents and Things (collectively, the "Requests") to Defendant The Secret Dis Group LLC a/k/a The Secret Disney Group a/k/a Sparkling Dreamers a/k/a Sparkling Members, and ask that the following occur within thirty (30) days of service hereof: (a) provide written responses to Plaintiffs' counsel of record in this matter; and (b) produce for inspection and copying, the

requested documents and things at the offices of Holihan Law, located at 1101 North Lake Destiny Road, Suite 400, Maitland, FL 32751.

The Requests are governed by the following Definitions and Instructions.

## DEFINITIONS

Notwithstanding any definition set forth below, each word, term, or phrase used in the Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. As used in the Requests, the following terms are to be interpreted in accordance with these definitions:

1.     "Communication" means any manner or means of disclosure, transfer, or exchange of information or expression, or statement of any nature, whether verbal or written, including Documents as defined below.

2.     "Complaint" means the Complaint filed by Plaintiffs in this action, and any amendments thereto that may subsequently be filed.

3.     "Concerning" means relating to, referring to, describing, evidencing, or constituting.

4.     "Defendant CBM" refers to Defendant Christopher B. Martin.

5.     "Defendant HVM" refers to Defendant Hannah Martin a/k/a Hannah Vieira a/k/a Hannah Ferreira.

6.     "Defendants" collectively refers to Defendant CBM, Defendant HVM, Popsella, and SDG.

7. "DEI" refers to Plaintiff Disney Enterprises, Inc., including any subsidiaries, parents, affiliates, divisions, agents, servants, employees, representatives, officers, directors, accountants, attorneys, persons or entities under DEI's control, or acting or purporting to act on behalf of DEI.

8. "Describe" means to disclose any information or Document that, in whole or in part, characterizes, evaluates, appraises, assesses, or provides a general explanation of the specified subject.

9. "Document(s)" means all written or graphic material or any other means of preserving thought or action of any type regardless of origin or location, however produced, reproduced, or otherwise documented (e.g.: written, typewritten, recorded, filmed, printed, transcribed, stored, saved, etc.) by any process and in any medium (electronic, hardcopy, etc.), regardless if claimed to be privileged or otherwise excludable from discovery, now or formerly in the possession, custody, or control of any Defendant(s), or agent(s), representative(s), affiliate(s), predecessor(s), or successor(s) of such Defendant(s), or Defendant(s) has the right or ability to obtain the subject material, including without limitation: records, papers, notes, correspondence (internal or otherwise), database content; ledgers, books, financial statements, checks, vouchers, purchase orders, invoices; memoranda, summaries, and reports regarding discussions, conversations (personal or otherwise), or acts/action (e.g.: negotiations, meetings, interviews, investigations); business plans, commercial proposals or offers, calculations,

3

evaluations, analyses (financial or otherwise), instructions, requisitions, manuals, guidelines, work papers, audits; development records, specifications, charts, labels, artwork, mock-ups, prototypes, drawings, spreadsheets, graphs, sketches, tables, photographs; calendar events and notes, meeting minutes, transcripts, opinions of consultants or counsel; agreements and contracts (formal or informal), assignments, licenses; enclosures, removable notes (e.g.: Post-It®), or attachments affixed to any of the foregoing, as well as any tangible files and contents of the same; advertisements, catalogs, brochures, pamphlets, promotional content and material; trade/industry articles and commentary, press releases, media coverage; electronic mail, chat logs, message threads, audio or video recordings; originals, drafts (regardless if resulting in a final version), and all copies that differ in any respect from the original (e.g.: any notation, annotation, marking, or data not on the original) [all of which shall be treated as separate Documents]; Communications (as defined above); and any Electronically Stored Information (as defined below) found on, or otherwise available via, Electronic Media (as defined below).

10.     "Electronic Media" refers to any system or equipment used to store, record, transmit, or otherwise access ESI. For purposes of clarity, Electronic Media includes computer hard drives, network memory and backup means, servers, external or removable drives (e.g.: thumb drives), disks, magnetic media, mobile

devices (e.g.: smart phones; tablets), telephone equipment, user accounts and archives, mobile or web applications, and web-based services (e.g.: cloud storage).

11.    "Electronically Stored Information" (ESI) means digital information stored in, or accessible through, a data retrieval system or device, otherwise referred to as Electronic Media.

    a.    ESI refers to the following categories of digital information: i) active data [immediately and reasonably accessible on current systems]; ii) archived data [residing on backup or storage media]; and iii) deleted data [that which has been removed from a system but is recoverable].

    b.    For purposes of clarity, ESI includes Documents (as defined above), files/file fragments, software or application output, system account data, stored textual and image materials (e.g.: word processing content, text files, spreadsheets, slide decks, PDFs, screenshots, photos, and videos); application data; user account data and content; audio and video recordings (e.g.: Reels; Facebook videos); calendar entries; electronic communications (e.g.: emails, SMS/text messages, instant messages) and transmittal/receipt data for the same; messaging application content (e.g.: WhatsApp correspondence); chat logs (e.g.: Meta direct messaging);

activity logs; computer or operating system generated records; web analytics; databases; temporary content (e.g.: Meta Stories, Snapchat correspondence); historical content (e.g.: deleted or disabled posts, photos, videos, livestreams, chats, messages, pages, profiles, groups).

12.    "Expenses" means, as relating to a profit and damages assessment, any fixed or variable costs Defendant claims should be deducted in calculating Defendants' profits derived from the actions at issue in this Litigation.

13.    "Gross Revenue" means, as relating to a profit and damages assessment, any revenue generated from Defendants' actions at issue in this Litigation. For purposes of clarity, Gross Revenue includes financial gain derived from providing the Infringing Services, sales of Unauthorized Merchandise, and any content monetization or advertising/marketing practices.

14.    "Identify" means the following information is requested when used in reference to the specified category below:

a.    Individual(s) – the person's full name, present or last known residential and business addresses, and present or last known position or business affiliation;

b.    Business(es) – the entity's full name, form of organization, present or last known address of its principal place of business,

the date on which it commenced doing business, and all officers or persons with an ownership interest;

c.   Document(s) – type of documentation, date created, author(s), addressee(s), signatories, parties or other individuals identified therein, its present location or custodian(s), and a brief description of the contents; and

d.   Communication(s) – type of correspondence, date created, identity of the parties conducting such correspondence, and a brief description of the contents.

15.   "Infringing Services" means the online retail business operated by Defendants, or any otherwise commercial practices involving the manufacturing, marketing, selling, offering for sale, and distributing of counterfeit and/or infringing goods which reproduce, depict, and/or incorporate Plaintiffs' Properties, including such unauthorized activities as identified in the Complaint and which are subject of the Litigation. For purposes of clarity, the Infringing Services includes the Defendants' creation and use of the SDG Content.

16.   "Litigation" refers to this lawsuit, as brought by the Plaintiffs, as well as the underlying subject matter and allegations regarding the actions and business practices of Defendant CBM, Defendant HVM, Popsella, and SDG.

17.   "Lucasfilm" collectively refers to Plaintiffs Lucasfilm Ltd. LLC and Lucasfilm Entertainment Company Ltd. LLC, including any subsidiaries, parents,

affiliates, divisions, agents, servants, employees, representatives, officers, directors, accountants, attorneys, persons or entities under Lucasfilm's control, or acting or purporting to act on behalf of Lucasfilm.

18.    "Person(s)" means any natural person, corporation, partnership, company, sole proprietorship, joint venture, firm, agency, governmental body or department, and any other privately or publicly owned or controlled, for-profit or nonprofit organization, association, entity.

19.    "Plaintiffs" collectively refers to DEI and Lucasfilm.

20.    "Plaintiffs' Copyrights" shall, individually and collectively, refer to the copyrights owned by DEI and Lucasfilm, including the copyrights evidenced by the U.S. Copyright Registrations identified in the Complaint and indexed in Exhibit A, as attached hereto.

21.    "Plaintiffs' Properties" shall collectively refer to Plaintiffs' Copyrights and Plaintiffs' Trademarks.

22.    "Plaintiffs' Trademarks" shall, individually and collectively, refer to the word marks and/or design marks associated with trademarks owned by DEI and Lucasfilm, including the trademarks evidenced by the U.S. Trademark Registrations identified in the Complaint and indexed in Exhibit B, as attached hereto.

23.    "Popsella" refers to Defendant Popsella Inc. a/k/a Popsella Marketplace, as well as those persons, organizations, or corporations, in active

concert or participation with it, or acting or purporting to act on its behalf, including officers, agents, directors, employees, or representatives.

24.     "Related" or "relating to" means containing, involving, constituting, considering, comprising, concerning, discussing, regarding, describing, reflecting, studying, commenting or reporting on, mentioning, analyzing, or referring, alluding, or pertaining to, or in any way touching upon the subject matter sought, in whole or in part.

25.     "SDG" means and refers to Defendant The Secret Dis Group LLC a/k/a The Secret Disney Group a/k/a Sparkling Dreamers a/k/a Sparkling Members, which includes all former iterations of such entities, as well as those persons, organizations, or corporations, in active concert or participation with it, or acting or purporting to act on its behalf, including officers, agents, directors, employees, or representatives.

26.     "SDG Agent(s)" means any individual(s) acting on behalf of, or at the direction of, SDG in relation to the Infringing Services, which specifically includes the users acting as administrators and moderators to the SDG Social Media. For purposes of clarity, SDG Agent(s) also refers to Defendant CBM and Defendant HVM when acting in the aforementioned capacity.

27.     "SDG Content" means material created, posted, or otherwise promoted by Defendants (or on their behalf), wherein such material involved use of Plaintiffs' Properties, specifically text, image, and audio references to various

properties (real and intellectual), characters, products, resorts, structures, rides, events, and attractions owned, operated, or otherwise associated with Plaintiffs, in conjunction with SDG's online presence, including marketing, offering for sale, and selling the Infringing Services and Unauthorized Product, as otherwise found on numerous online platforms. For purposes of clarity, SDG Content includes SDG Reviews as well as material that is published/presently viewable, temporary by design (e.g.: Facebook or Instagram Story; Snapchat Snap), or previously deleted, archived, or otherwise disabled, on all SDG Sites, SDG Social Media (e.g.: current and past pages, profiles, groups, and accounts, whether terminated, deactivated, renamed, or inactive), and SDG Third Party Sites.

28.   "SDG Reviews" means the feedback or opinion(s) of customers regarding the Unauthorized Merchandise and/or their experience with SDG within the context of the Infringing Services. For purposes of clarity, SDG Reviews include such user generated content at any point, submitted to, or otherwise found on, the SDG Sites, SDG Social Media, or SDG Third Party Sites, regardless if the referenced content currently is, or was ever, publicly viewable.

29.   "SDG Sites" means commercial website(s) registered to, owned or operated by, or otherwise associated with, any Defendant(s) during the Time Period, including secretdisneygroup.com, sparklingdreamers.com, sparklingmembers.com, and popsella.com

30.    "SDG Social Media" means the social media pages, profiles, groups, and accounts on various online platforms created by, registered to, operated by, or otherwise associated with any Defendant(s) during the Time Period, including platforms such as Facebook, Instagram, TikTok, MeWe, Twitter (n/k/a X), LinkedIn, Reddit, Snapchat, Pinterest, WeChat, and YouTube. For purposes of clarity, SDG Social Media means all past pages, profiles, groups, and accounts, whether terminated, deactivated, renamed, or inactive, including without limitation, the following: The Secret Disney Group; Popsella; The Secret Theme Park Group – PART TWO; The Secret Disney Group – PART TWO; The Secret Dis Group – PART TWO; The Secret Disney Page; Sparkling Dreamers Group; Sparkling Dreamers; Popsella Marketplace; Popsella Group; Magical Photoshop Group; The Annual Pass Dis Group; The Secret Theme Park Group; The Secret Dis Group: Elite; Sparkling Members; Official Sellers of Orlando Theme Parks and Beyond Group; The Amazing Secret Theme Park Group; The Secret Theme Park Group with Chris & Hannah Martin; @traveltheworldwithchris; @officialpopsella; @heymauimartin; @heyhannahmartin; @heyhannahmartin0; @hannahferreirav; @chrismartinrocks; @originalchrismartin; @heychrismartin; @chrislovesdisney.

31.    "SDG Third Party Sites" means any storefronts, marketplace shops, and seller accounts registered to, operated by, or otherwise associated with, any Defendant(s) found on third-party sales websites during the Time Period, including websites such as Etsy, eBay, and Amazon.

32.   "Search Terms" mean the following case-neutral words, abbreviations, or acronyms: ad/advertise/advertisement; affiliate; AK; Amazon; analytics; Animal Kingdom; Bonuses; Business Suite; cap; case; character; click; Community Standards; Content Monetization Policies; copy/copying; copyright; counterfeit; CR; Creativity Program; Creator Fund; Creator Portal; Creator Studio; decal; Digital Creator; Dis/Disney; Disneyland; DVC; ear; eBay; engagement; Epcot; Etsy; Facebook; fair use; fanny pack; FB; FYP; giveaway; hair accessory; hat; headband; Hollywood Studios; IG; illegal; influencer; infringe/infringing; insta; intellectual property; IP; jewelry; keychain; knock-off; Lake Buena Vista; lanyard; law; lawsuit; LBV; license/licensing; Live; Magic Kingdom; magnet; mark; market/marketing; mask; member/membership; monetize; mouse [including standard Android and Apple 'mouse' emoji]; partner; Partner Monetization Policies; patch; payout; Performance Bonus Program; Popsella; post; Professional Dashboard; Professional Mode; promo/promotion; rat; reel; Reels Play; registration; resale/resell; resort; revenue; Reward Payment; scrunchie; SDG; secret; SnapChat; Sparkling Dreamer; sponsor/sponsorship; sticker; Story/Stories; subscribe/subscription; TikTok; TM; trademark; TT; video; views; violate/violation; viral; Walt; WDW; YouTube; and all copyrighted character names identified as Plaintiffs' Copyrights in the attached Exhibit A. Note that pursuant to Section 38(c) below, all such Search Terms shall include the pluralized term where applicable.

33. "Sparkling Dreamers Mark" refers to the trademark utilized by SDG that was the subject of USPTO Application No. 90460395, and includes all drafts, prototypes, or previously used iterations of said mark, as well as any hang tags, merchandise labels, or derivative logos depicting the same.

34. "Supplier(s)" refers to any individual or entity utilized by SDG to manufacture and/or supply to SDG Unauthorized Merchandise or any component(s) of the same.

35. "Time Period" refers to the duration of time from July 1, 2007 (the approximate inception of SDG), through the date of the Requests.

36. "Unauthorized Merchandise" means and refers to goods that infringe or otherwise trade upon Plaintiffs' Properties, including such unauthorized products as identified in the Complaint and which are subject of the Litigation, as well as any part(s) or component(s) utilized in the manufacture or creation of such unauthorized products.

37. "You" and "your" refers to the person or entity to which the Requests are served and/or the Defendant(s), as defined herein.

38. Construction of Request language:

    a. The terms "and" or "or" are inclusive, and when either is used it shall be construed as "and/or."

    b. Regardless of the tense employed, all verbs shall be construed to apply all tenses (i.e.: past, present, and future).

c.      Use of the singular shall include the plural, and vice versa.

d.      Use of the terms "any" or "all" is conjunctive and shall be construed to include the other.

e.      Unless the context specifically indicates otherwise, use of any gender-specific pronoun includes all other pronouns.

f.      The term "including" shall be construed as "including, but not limited to" or "including without limitation."

**INSTRUCTIONS**

1.      Defendant is to search all Documents and things within its possession, custody or control or within the possession, custody, or control of its agents and representatives wherever located, including Documents and things placed in off-site storage facilities, and Documents and things located at the residences or other places of business associated with Defendant and its agents and representatives.

2.      Pursuant to Fed. R. Civ. P. 34(b)(i), Defendant is instructed to produce Documents as they are kept in the usual course of business, or to organize and label the Documents to correspond to the categories set forth in these Requests, where applicable.

3.      Pursuant to Fed. R. Civ. P. 34(b)(ii), ESI shall be produced in the form in which it is ordinarily maintained by Defendant (i.e.: native format). Where it is

not possible to produce information in native format, Defendant shall so state, and shall produce the information in a form that is reasonably usable.

4.  All Documents produced in response to these Requests shall be produced in their entirety notwithstanding the fact that portions thereof may contain information not requested.

5.  All Documents produced in response to these Requests shall be produced along with any attachments and/or enclosures, which have been attached to and/or enclosed with such Documents at any time.

6.  If any responsive Documents or things cannot be produced in full, produce them to the fullest extent possible, clearly specifying the reasons for the inability to produce the remainder.

7.  Any information not provided on the basis that the disclosure would be burdensome or oppressive should be identified by stating the approximate number of documents to be produced, the approximate number of person-hours to be incurred in the identification, and the estimated cost of responding to the request. This will make it possible to further narrow any request and potentially identify a reasonable alternative or limitation, and Plaintiffs will meet and confer on that matter.

8.  Each copy or duplicate of a document bearing initials, stamps, comments or notations of any character which are not part of the original text shall be considered a separate document. Additionally, all drafts (whether typed,

handwritten or otherwise) made or prepared in connection with any document shall be considered a separate document.

9.      If Documents or things responsive to these Requests cannot be located, describe in detail the particulars of the efforts made to locate such Documents or things, and the reasons for their disappearance or unavailability. If such Documents or things exist but are not available, describe to the best of your knowledge where the Documents or things are located, including the name, address and telephone number of the custodian.

10.     Should there be an objection to providing a Document, ESI, or oral communication because of a privilege, or a redaction to the same on the basis of privilege, Defendant must nevertheless provide the following information, unless doing so would disclose the privileged information:

      a.      Nature of the privilege claimed (including work product);

      b.      If the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked;

      c.      Date of the Document, ESI, or oral communication;

      d.      Type of Document (e.g.: letter, memorandum, etc.), and if ESI, the software application used to create it (e.g.: MS Word, MS Excel, etc.);

      e.      Number of pages in the Document;

f.     Custodian, location, and such other information sufficient to identify the material of a subpoena duces tecum or a production request, including name, title and address of the author(s), addressee(s), or any recipient(s), and if not apparent, the relationship between the same;

g.     General subject matter of the Document, ESI, or oral communication; and

h.     Number of the Request(s) to which the Document is otherwise responsive.

11.     If you decline to provide any of the above information on the basis that divulging such information would disclose privileged information, you must clearly state that you are doing so, and you must provide as much of this information as you can without disclosing privileged information. In no case shall you disclose less information than is necessary for Plaintiffs to evaluate the privilege asserted.

12.     Any Requests referencing the production of specimens, request that the referenced item(s) be delivered to Plaintiffs' Counsel along with any other documents and things produced by Defendants in response to these Requests. In the event that Defendants are unable to facilitate the delivery of such specimens, counsel for the parties shall designate a mutually agreed upon location for Plaintiffs' Counsel to examine such specimens.

13.     These Requests are submitted for the purpose of discovery and are not to be taken as waiving any objection that may be made at trial to the introduction of evidence on subjects covered by such Requests.

14.     Unless otherwise specified, these Requests seek Documents relevant to the Time Period, as defined above.

15.     Defendant is under a continuous obligation to supplement any answer(s) to these Requests under the circumstances specified in Federal Rule of Civil Procedure 26(e).

16.     When producing the documents, please segregate the documents provided according to each of the Requests to which the Documents are responsive.

### REQUESTS FOR PRODUCTION

1.     All Documents identified in Defendants' Fed. R. Civ. P. 26(a) Initial Disclosures.

2.     Documents sufficient to show all individuals involved or having any ownership interest in each iteration of SDG's corporate structure since its inception.

3.     Documents sufficient to show all individuals involved in SDG's regular, day-to-day operations, their titles, and a brief summary of their respective roles/positions.

4.      Documents sufficient to show all licenses and permits – whether active or lapsed – related to SDG's business operations.

5.      Any Documents sufficient to identify the following information regarding all SDG Agents and employees [with the response to this Request reflecting the same such separation as designated below]:

     a.      Full name;

     b.      Physical address;

     c.      Confirmed contact information (e.g.: valid email address or phone number);

     d.      Title of position;

     e.      Start and end dates of tenure;

     f.      Brief summary of role/responsibilities within scope of position; and

     g.      A representative example of the identified SDG Agent or employee acting within the scope of their respective role/position, or otherwise performing their respective duties as explained by SDG.

6.      Documents referencing, or otherwise evidencing any policies, procedures, guidelines, or rules concerning the following:

     a.      SDG's business operations;

     b.      SDG Agents' duties;

      c.      Use of the SDG Social Media by Defendants, SDG Agents, and members/users; and

      d.      Creation and use of SDG Content.

7.      All Documents and Communications between SDG and SDG Agents concerning the SDG Social Media, user activity, Infringing Services, and Unauthorized Merchandise.

8.      All Documents and Communications between SDG and Defendant CBM, Defendant HVM, affiliates, and sponsors in any way concerning SDG's business operations and practices.

9.      All Documents and Communications involving any Defendant(s) regarding the following in relation to SDG's commercial activity [with the response to this Request reflecting the same such separation as designated below]:

      a.      Evolution of SDG's business model;

      b.      Creation of the Unauthorized Merchandise; and

      c.      SDG's reproduction or use of Plaintiffs' Properties.

10.      All Documents and Communications involving SDG's use of the term "Disney," specifically limited to the following manners [with the response to this Request reflecting the same such separation as designated below]:

      a.      Business entity name(s)

      b.      SDG Site domain(s)

      c.      SDG Social Media account(s), page(s), and group name(s)

d.    SDG Third Party Site account(s) and page(s)

11.    All Documents and Communications evidencing, or referring to, Defendant(s) seeking approval from Disney to use Plaintiffs' Properties in conjunction with commercial activity, or otherwise seeking a business relationship with Disney.

12.    All Documents and Communications concerning the importation or attempted importation of Unauthorized Merchandise by SDG, including entry documents, transportation documents, shipping documents (e.g.: bills of lading, shipping receipts, inventory lists, etc.), payment documents, documents filed with or received from U. S. Customs and Border Protection (e.g.: seizure notices), and any related documentation received from Suppliers.

13.    Documents and Communications involving SDG and Suppliers regarding Unauthorized Merchandise, including the following [with the response to this Request reflecting the same such separation as designated below]:

a.    Identification and valid contact information for any such Supplier(s);

b.    All SDG orders or purchases from Supplier(s);

c.    SDG's receipt or physical possession of Unauthorized Merchandise; and

d.    Contracts or otherwise, evidencing an agreement concerning commercial activity.

21

14.   All Communications between SDG and Suppliers or third-party sources concerning product(s) reproducing or otherwise utilizing Plaintiffs' Properties, including any inquiries or requests from SDG regarding the same (e.g.: written correspondence from SDG to a potential manufacturer asking about measurements or structural details of mouse ear headbands).

15.   Documents and Communications sufficient to show annual Gross Revenue and net profits from SDG's business operations. For purposes of clarity, this Request concerns production of profit data resulting from SDG's commercial activity, it is not limited to Unauthorized Merchandise profits alone.

16.   All Documents and Communications concerning SDG's annual Expenses associated with the Infringing Services and Unauthorized Merchandise.

17.   All Documents and Communications relating to the sale or distribution of Unauthorized Merchandise by SDG, including that which evidences fulfillment of orders and/or purchases conducted online and offline.

18.   Documents sufficient to show the number of SDG Site user registrations and SDG Social Media membership requests per month during the Time Period. For purposes of clarity, this Request is not asking for personally identifying information of SDG's users/members, only the monthly numerical volume of such users/members.

19.     Documents sufficient to show the Gross Revenue generated from SDG Site and SDG Social Media paid membership(s) and subscription service registration(s).

20.     All monthly statements during the Time Period for all banking accounts in SDG's name, or otherwise associated with the business operations of SDG.

21.     All payroll records during the Time Period associated with the business operations of SDG.

22.     All Documents and Communications concerning compensation or monetary payment(s) issued from SDG to any of the following [with the response to this Request reflecting the same such separation as designated below]:

      a.     Defendant CBM

      b.     Defendant HVM

      c.     Any SDG officers or directors, other than Defendant CBM or Defendant HVM

      d.     Suppliers

      e.     Partner entities or individuals

      f.     Third-party vendors

23.     All SDG federal and state tax records, or international equivalent, since SDG's creation.

24.    Any Documents related to the ownership of any real property which identifies SDG, or any of its officers or directors, as possessing an ownership interest in the same.

25.    All payment processor records, including Communications with said processing entity, customers, or potential customers, regarding transactions in any way related to the Unauthorized Merchandise, Infringing Services, or containing any of the Search Terms.

26.    All Documents and Communications regarding monetization of SDG Social Media account(s) content.

27.    All Documents sufficient to evidence all monthly Gross Revenue payouts during the Time Period, resulting from SDG Social Media.

28.    All ACH records of transactions in any way related to the Infringing Services, Unauthorized Merchandise, or SDG operations, for any financial account(s) belonging to any of the Defendants. For purposes of clarity, this Request includes the identification of any financial account(s) tied to the SDG Sites, SDG Social Media, and SDG Third Party Sites.

29.    All Documents and Communications regarding efforts by any Defendant(s) to advertise and market SDG, the Infringing Services, or the Unauthorized Merchandise, including evidence sufficient to identify specific online and/or offline methods and channels of such promotional activity.

30. All Documents and Communications since January 1, 2014, concerning online marketing or promotional content involving Unauthorized Merchandise, via any domain name(s) or social media account(s) registered to, operated by, or otherwise in the name of SDG and/or any of its officers or directors, along with copies of any such content.

31. Documents sufficient to identify all promotional material emailed by, or on behalf of, SDG during the Time Period.

32. Documents sufficient to identify each discount event or price reduction sale of Unauthorized Merchandise since December 2, 2021.

33. All Documents and Communications during the Time Period, regarding or referring to the target demographic or type of customer(s) to whom SDG advertises, markets, promotes, or sells the Infringing Services or Unauthorized Merchandise.

34. Documents sufficient to show each instance wherein SDG Content was recorded or otherwise created on Disney theme park or resort property.

35. Documents sufficient to show, and any Communications regarding, each instance wherein SDG Content depicts Unauthorized Merchandise with genuine or otherwise authorized Disney product(s) (e.g.: SDG Content displaying a Disney-themed Loungefly backpack with a mouse ear headband manufactured, offered for sale, or sold by SDG).

36.     Documents sufficient to show each instance wherein SDG Content depicts Unauthorized Merchandise with a use of Plaintiffs' Properties, whether image or text.

37.     Documents sufficient to evidence all standard web analytics related to the SDG Sites.

38.     Documents sufficient to evidence all platform-provided analytics for SDG Social Media, which would include without limitation, page performance, group statistics, content insights (e.g.: "reach, reactions, shares, and comments" as defined by relevant Meta Policies), as well as Gross Revenue generation calculations related to the same.

39.     Representative specimens of each type of product bearing or otherwise trading upon Plaintiffs' Properties, that was manufactured, distributed, marketed, offered for sale, or sold by SDG during the Time Period.

40.     Representative specimens of each iteration of label, hang tag, and product packaging used by SDG in association with the Unauthorized Merchandise during the Time Period.

41.     All Documents and Communications, from January 1, 2019 to the present, relating or referring to the creation, design, development, marketing, offer for sale, and sale of Unauthorized Merchandise, as specifically limited to face masks bearing Plaintiffs' Properties.

42.     All Documents and Communications, during the Time Period, relating or referring to the creation, design, development, marketing, offer for sale, and sale of Unauthorized Merchandise, as specifically limited to the following categories of products, bearing or otherwise trading upon Plaintiffs' Properties [with the response to this Request reflecting the same such separation as designated below]:

      a.      Keychains

      b.      Stickers, decals, and magnets

      c.      Fanny packs

      d.      Hats (e.g.: baseball caps)

      e.      Magnets

      f.      Hair accessories (e.g.: scrunchies; headwraps/fabric headbands)

      g.      Novelty buttons

      h.      Apparel (e.g.: youth dresses)

      i.      Fashion jewelry

      j.      Mouse ear headbands

43.     Documents and Communications sufficient to show all effort(s) by SDG to prevent any association or affiliation with, or connection to Plaintiffs or Plaintiffs' Properties. For purposes of clarity, this Request includes procedures or

protocol implemented to deter a likelihood of confusion by consumers as to the source of the Infringing Services and Unauthorized Merchandise.

44.     All Documents showing, and any Communications discussing, each instance wherein SDG's business location or physical address is identified as the same as a Disney theme park or resort property, whether by name, geographic location, or both (e.g.: "Walt Disney World Resort Orlando, Florida 32830").

45.     All Documents and Communications with a representative of a social media platform concerning the SDG Social Media in any manner, including technical support, group page functionality, content monetization, and revenue generation and payment.

46.     Documents sufficient to show all versions of 'Rules from the Admins' for each Facebook.com group having existed within the scope of SDG Social Media.

47.     All Documents and Communications evidencing or otherwise referring to individual member removals from all Facebook.com groups having existed within the scope of SDG Social Media.

48.     All Documents and Communications from any person or entity other than Plaintiffs, putting SDG on notice concerning violation of Plaintiffs' Copyrights or Plaintiffs' Trademarks. For purposes of clarity, this Request includes breach of service provider policies or guidelines, and statements or inquiries from SDG Social Media group members and the general public

questioning SDG's use of Plaintiffs' Properties with the Infringing Services and Unauthorized Merchandise.

49. All Documents and Communications referencing any potential copyright or trademark applications and registrations, in any way related to SDG, the Infringing Services, or the Unauthorized Merchandise, including any correspondence concerning the development, use, or cessation of use of the Sparkling Dreamers Mark.

50. All Documents and Communications relating to instances of, or inquiries concerning, actual or possible confusion, mistake or deception regarding an affiliation or association between Plaintiffs or Plaintiffs' Properties and the Infringing Services, Unauthorized Merchandise, or SDG. For purposes of clarity, this Request includes statements or inquiries by third party's identifying Plaintiffs' Properties in relation to the Unauthorized Merchandise.

51. All Documents and Communications involving complaints, negative feedback, or return/refund requests in relation to the Unauthorized Merchandise, Infringing Services, or any Defendant's involvement in the same.

52. All Documents and Communications evidencing, or otherwise referring to, all SDG Reviews.

53. Documents sufficient to show each action taken, or SDG Content posted, by you or any SDG Agents since December 2, 2021, to migrate SDG Social

Media users and members to another group or page registered to, or otherwise operated by SDG.

54.   All Communications referencing any of Plaintiffs' Properties and/or the Search Terms, wherein any of the following are a sender and/or recipient of such Communication(s) [with the response to this Request reflecting the same such separation as designated below]:

> a.   Email account(s) registered to, associated with, or otherwise utilizing a domain name of, the SDG Sites;
>
> b.   Social media user account(s), page account(s), or group account(s) registered to, or operated by, any of the Defendants; and
>
> c.   Third party website user account(s), page account(s), or storefront account(s) registered to, or operated by, any of the Defendants.

55.    All Documents and Communications with SDG or Defendant(s) as an identified party, evidencing any form of business relationship concerning the Infringing Services or Unauthorized Merchandise (e.g.: advertising, distribution, fulfillment services), including formal or informal contracts or agreements. If no such Documents are available, please provide the name, address, and contact information of any involved party that is not SDG or the Defendants.

56.   All ESI in your possession containing any Search Terms.

57.    All Documents, demonstrative aids, summaries, or other items that you intend to utilize at trial, whether as an exhibit or to assist the testimony of a witness in any way.

58.    All Documents identifying, referring, or relating to all Persons you expect to call as an expert witness at trial, the area(s) of expertise and subject matter on which the expert is expected to testify and a summary of the grounds for each opinion, all written reports of each expert, the most recent resume or curriculum vitae of each expert and all notes, diagrams, photographs, videotapes, or other Documents prepared or reviewed by each expert.

59.    Documents sufficient to show that SDG was permitted to use Plaintiffs' Properties, or otherwise supporting the contention that SDG did not infringe upon Plaintiffs' Properties.

60.    Documents supporting your contention that SDG's use of Plaintiffs' Properties via the Infringing Services and Unauthorized Merchandise was 'fair use' under federal law.

61.    Documents supporting your contention that SDG's use of Plaintiffs' Properties introduced commentary or criticism to the public as parody or satire.

62.    Documents and Communications sufficient to show evidence of the following [with the response to this Request reflecting the same such separation as designated below]:

a.    Plaintiffs' damage(s) or injury suffered in this Lawsuit is a result of the action(s), inaction(s), or omission(s) of Plaintiffs;

b.    Plaintiffs have 'unclean hands' in this Lawsuit;

c.    Plaintiffs are unable to recover under copyright or trademark laws because this Lawsuit is barred by laches; and

d.    Plaintiffs are unable to recover under copyright or trademark laws because this Lawsuit is barred by estoppel.

63.   All Documents not previously identified in your responses to these Requests which support, refer, or relate to any claims or defenses relevant to the Complaint.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 27, 2023, a true and correct copy of the

foregoing was furnished by electronic mail to the following counsel of record:

Richard C. Wolfe, Esq.
Wolfe Law Miami P.A.
175 SW 7th St., Penthouse, Ste. 2410
Miami, FL 33130
rwolfe@wolfelawmiami.com

/s/ Kimberly A. Harchuck
Kimberly A. Harchuck, Esq.
Florida Bar No.: 0064852
Michael W. O. Holihan, Esq.
Florida Bar No.: 0782165
Holihan Law
1101 North Lake Destiny Rd., Ste 400
Maitland, Florida 32751
Telephone: (407) 660-8575
michael.holihan@holihanlaw.com
kimberly.harchuck@holihanlaw.com
Counsel for Plaintiffs

# EXHIBIT A

Ex. A – Plaintiffs' Copyright Index

**Plaintiff DEI Copyrighted Properties [cont'd.]**

| Character | Copyright Reg. No. | Title of Work | Type of Work |
|---|---|---|---|
| Aladdin | VA 504-973 | Aladdin | Licensing Kit |
| Alice | VA 1-969-547 | Disney Alice in Wonderland | Product Development |
| Anna | VA 1-887-054 | Disney Frozen Product Development Portfolio FH13 Update | Product Development Portfolio |
| Anton Ego | VA 1-395-600 | Ratatouille Cookbook | Style Guide |
| Ariel | TX 5-520-621 | The Disney Princess Branding Guide 2002-2004 | Branding Guide |
| Ariel | VAu 143-283 | The Little Mermaid | Licensing Kit |
| Ariel | VA 851-710 | The Little Mermaid | Style Guide |
| Arisocats | VAu 654-024 | The Aristocats Berkioz Marie Antoinette & Toulouse Sketch | Artwork |
| Aristocats | VAu 654-025 | The Aristocats Scat Cats Sketches | Sketches |
| Aurora | TX 5-520-621 | The Disney Princess Branding Guide 2002-2004 | Branding Guide |
| Bambi | VA 124-730 | Disney Character Guide | Pamphlet of Drawings |
| Baymax | VA 1-944-063 | Disney Big Hero 6 – Product Development Portfolio | Product Development Portfolio |
| Beast | VAu 210-914 | Disney's Beauty and the Beast | Licensing Kit |
| Belle | TX 5-520-621 | The Disney Princess Branding Guide 2002-2004 | Branding Guide |

## Plaintiff DEI Copyrighted Properties [cont'd.]

| Character | Copyright Reg. No. | Title of Work | Type of Work |
|---|---|---|---|
| Belle | VAu 210-914 | Disney's Beauty and the Beast | Licensing Kit |
| Brave | VA 1-901-160 | Disney Pixar Brave: An Original Walt Disney Records Soundtrack | Artwork |
| Brave | VA 1-864-349 | Disney Pixar Brave Publishing Exclusive | Style Guide |
| Buzz Lightyear | VAu 337-566 | Toy Story – Buzz Lightyear | Artwork |
| Buzz Lightyear | VA 735-197 | Toy Story | Style Guide |
| Castle | VAu 1-224-516 | Shanghai Disney Resort Castle Graphic | Style Guide |
| Castle | VAu 1-360-045 | RunDisney WDW Marathon Weekend 2017 | Style Guide |
| Castle | VAu 1-359-338 | Christmas 2017 Woodland Wonder Storybook | Style Guide |
| Cheshire Cat | VA 1-969-547 | Disney Alice in Wonderland | Style Guide |
| Chip | VA 124-730 | Disney Character Guide | Pamphlet of Drawings |
| Chip and Dale | VA 124-730 | Disney Character Guide | Pamphlet of Drawings |
| Cinderella | VA 1-831-706 | Cinderella Branding and Packaging | Branding & Packaging Guide |
| Cinderella | TX 5-520-621 | The Disney Princess Branding Guide 2002-2004 | Branding Guide |
| Daisy Duck | Gp 81520 | Daisy Duck | Model Sheet |

## Ex. A – Plaintiffs' Copyright Index

### Plaintiff DEI Copyrighted Properties [cont'd.]

| Character | Copyright Reg. No. | Title of Work | Type of Work |
|---|---|---|---|
| Dale | VA 124-730 | Disney Character Guide | Pamphlet of Drawings |
| Dalmatians | VAu 188-163 | Walt Disney's 101 Dalmatians | Licensing Kit |
| Disney Villians | VA 1-374-907 | Disney Villians | Style Guide |
| Donald Duck | Gp 80184 | Donald Duck | Model Sheet |
| Dopey | Gp 81522 | Dopey | Model Sheet |
| Dumbo | VA 2-133-757 | Disney Dumbo Heritage Guide Portfolio Version | Portfolio Guide |
| Elsa | VA 1-887-054 | Disney Frozen Product Development Portfolio FH13 Update | Product Development Portfolio |
| Eric | VAu 143-283 | The Little Mermaid | Licensing Kit |
| Fauna | VA 124-730 | Disney Character Guide | Pamphlet of Drawings |
| Figment | VAu 1-482-300 | Figment Park Experience | Style Guide |
| Flora | VA 124-730 | Disney Character Guide | Pamphlet of Drawings |
| Flounder | VA 851-710 | The Little Mermaid | Style Guide |
| Flounder | VAu 143-283 | The Little Mermaid | Licensing Kit |
| Flynn | VA 1-729-798 | Tangled Branding and Packaging Guidelines | Branding and Packaging Guide |

Ex. A – Plaintiffs' Copyright Index

**Plaintiff DEI Copyrighted Properties [cont'd.]**

| Character | Copyright Reg. No. | Title of Work | Type of Work |
|---|---|---|---|
| Forky | VA 2-174-533 | Toy Story 4 | Style Guide |
| Genie | VA 504-973 | Aladdin | Licensing Kit |
| Genie | VA 2-247-981 | Aladdin 30th Anniversary | Style Guide |
| Goofy | VA 58-936 | Goofy-1 | Model Sheet |
| Goofy | Gp 80187 | Goofy | Model Sheet |
| Goofy | VA 2-101-248 | Goofy Style – Portfolia Version 1 Greater China Global | Style Guide |
| Haunted Mansion | VAu 1-428-582 | Haunted Mansion Core | Style Guide |
| Hocus Pocus | VA 2-191-518 | Hocus Pocus – Gather Around Sisters | Style Guide |
| Hunny Pot | VA 2-202-228 | Winnie the Pooh Up in Time for Hunny | Portfolio |
| Jack Skellington | VA 1-733-698 | Tim Burton's The Nightmare Before Christmas Design Portfolio | Style Guide |
| Jafar | VA 504-973 | Aladdin | Licensing Kit |
| Jasmine | TX 5-520-621 | The Disney Princess Branding Guide 2002-2004 | Branding Guide |
| Jasmine | VA 1-308-594 | Jasmine from Aladdin | Style Guide |
| Jasmine | VA 504-973 | Aladdin | Licensing Kit |

**EX. A – PLAINTIFFS' COPYRIGHT INDEX**

**PLAINTIFF DEI COPYRIGHTED PROPERTIES [CONT'D.]**

| CHARACTER | COPYRIGHT REG. NO. | TITLE OF WORK | TYPE OF WORK |
|---|---|---|---|
| Jessie | VAu 405-572 | Toy Story 2 – Jessie | Model Sheet |
| John Darling | VA 124-730 | Disney Character Guide | Pamphlet of Drawings |
| Joy | VA 1-927-017 | Disney Pixar Inside Out | Style Guide |
| Judy Hopps | VA 2-009-306 | Disney Zootopia | Style Guide |
| Kuzco Llama | VAu 479-683 | Kuzco Llama | Model Sheets |
| Mad Hatter | VA 1-969-547 | Disney Alice in Wonderland | Product Development |
| Maleficent | VA 124-730 | Disney Character Guide | Pamphlet of Drawings |
| March Hare | VA 1-969-547 | Disney Alice in Wonderland | Product Development |
| Marie | VA 124-730 | Disney Character Guide | Pamphlet of Drawings |
| Mary Poppins | VA 2-100-206 | Disney Mary Poppins Returns | Style Guide |
| Merryweather | VA 124-730 | Disney Character Guide | Pamphlet of Drawings |
| Michael Darling | VA 124-730 | Disney Character Guide | Pamphlet of Drawings |
| Mickey Mouse | VA 1-886-828 | Disney Let Magic Light The Way | Style Guide |
| Mickey Mouse | Gp 80183 | Mickey Mouse | Model Sheet |
| Mickey Mouse | VA 2-056-530 | Disney Mickey Mouse – Adult Branding Version | Style Guide |

Ex. A – Plaintiffs' Copyright Index

**Plaintiff DEI Copyrighted Properties [cont'd.]**

| Character | Copyright Reg. No. | Title of Work | Type of Work |
|---|---|---|---|
| Mickey Mouse | VAU 264-118 | Partners Artwork | Artwork |
| Mickey Mouse (Full Body) | VA 1-886-838 | Disney Mickey Mouse: Mickey And Friends Foundation Guide | Foundation Guide |
| Mickey Mouse (Santa Costume) | VAu 1-359-338 | Christmas 2017 Woodland Wonder Storybook | Style Guide |
| Minnie Mouse | VA 1-857-568 | It's All About Minnie | Style Guide |
| Minnie Mouse | Gp 80191 | Minnie Mouse | Model Sheet |
| Minnie Mouse | VA 58-938 | Minnie - 1 | Model Sheet |
| Minnie Mouse Ears | VA 2-046-132 | Disney Minnie Mouse: The House of Minnie | Portfolio |
| Minnie Three Circle Design | VA 2-056-418 | Disney Minnie Mouse Adult | Branding Guide |
| Moana | VA 2-049-805 | Disney Moana | Style Guide |
| Olaf | VAu 1-155-858 | Frozen - Olaf | Model Sheets |
| Oogie Boogie | VA 1-733-698 | Tim Burton's The Nightmare Before Christmas Design Portfolio | Style Guide |
| Orange Bird | RE 869-521 | The Orange Bird Sticker Fun | Stlye Guide |
| Orange Bird | RE 785-224 | The Orange Bird – 15 | Drawing |

Ex. A – Plaintiffs' Copyright Index

**Plaintiff DEI Copyrighted Properties [cont'd.]**

| Character | Copyright Reg. No. | Title of Work | Type of Work |
|---|---|---|---|
| | | Sketched of Cartoon Character | |
| Oswald | VAu 1-463-102 | D100 Oswald Moments | Style Guide |
| Peter Pan | RE 64-027 | Peter Pan | Motion Picture |
| Peter Pan | VA 124-730 | Disney Character Guide | Pamphlet of Drawings |
| Piglet | VA 124-730 | Disney Character Guide | Pamphlet of Drawings |
| Pinocchio | VA 490-865 | Pinocchio | Licensing Kit |
| Pirates of the Caribbean | VA 1-369-221 | Pirates of the Caribbean – Umbrella Branding Guide | Style Guide |
| Pirates of the Caribbean | VA 1-414-966 | Pirates of the Caribbean: At World's End Packaging Updates | Style Guide |
| Pluto | Gp 80192 | Pluto Publications Model Sheet | Model Sheet |
| Prince Charming | VA 124-730 | Disney Character Guide | Pamphlet of Drawings |
| Prince Phillip | VA 124-730 | Disney Character Guide | Pamphlet of Drawings |
| Queen of Hearts | VA 1-969-547 | Disney Alice in Wonderland | Style Guide |
| Rapunzel | VA 1-729-798 | Tangled Branding and Packaging Guidelines | Branding Guide |
| Ratatouille | VA 1-395-600 | Ratatouille Cookbook | Style Guide |
| Rex | VAu 337-568 | Toy Story - Rex | Artwork |
| Robinhood | VA 124-730 | Disney Character Guide | Pamphlet of Drawings |

EX. A – PLAINTIFFS' COPYRIGHT INDEX

PLAINTIFF DEI COPYRIGHTED PROPERTIES [CONT'D.]

| CHARACTER | COPYRIGHT REG. NO. | TITLE OF WORK | TYPE OF WORK |
|---|---|---|---|
| Sally | VA 1-733-698 | Tim Burton's The Nightmare Before Christmas Design Portfolio | Style Guide |
| Simba | VA 611-201 | The Lion King | Licensing Kit |
| Simba | VAu 246-440 | The Lion King – Young Simba | Model Sheet |
| Sleeping Beauty | RE 296-296 | Sleeping Beauty | Licensing Kit |
| Snow White | TXu 546-761 | Snow White & the Seven Dwarfs | Licensing Kit |
| Snow White | VA 1-893-848 | Disney Princess: Snow White – The Fairest One of All | Style Guide |
| Snow White | TX 5-520-621 | The Disney Princess Branding Guide 2002-2004 | Branding Guide |
| Sorcerer Mickey | VA 124-730 | Disney Character Guide | Pamphlet of Drawings |
| Stitch | VA 1-094-896 | Lilo and Stitch | Style Guide |
| Tangled | VA 1-739-212 | Tangled – Teaser One Sheet | Portolio |
| The Incredibles | VA 1-242-351 | The Incredibles | Style Guide |
| The Little Mermaid | PA 431-543 | The Little Mermaid | Style Guide |

**Ex. A – Plaintiffs' Copyright Index**

**Plaintiff DEI Copyrighted Properties [cont'd.]**

| Character | Copyright Reg. No. | Title of Work | Type of Work |
|---|---|---|---|
| Three Circle Design | VA 1-812-381 | Simply Mickey Fashion & Home P- Infant | Style Guide |
| Three Circle Design | VA 2-056-530 | Disney Mickey Mouse Adult | Branding Guide |
| Tiana | VA 1-681-711 | Princess and the Frog, The | Product Development Portfolio |
| Tinker Bell | VA 891-493 | Disney Classics – Volume II | Style Guide |
| Tinker Bell | VA 1-110-867 | Tinker Bell Style Guide | Style Guide |
| Toy Story | VA 1-800-737 | Toy Story 3 | Style Guide |
| Turning Red | VA 2-249-971 | Turning Red Style Guide | Style Guide |
| Up | VA 1-812-460 | Up – Character Art Supplement | Style Guide |
| Ursula | VA 851-710 | The Little Mermaid | Style Guide |
| Ursula | VAu 143-283 | The Little Mermaid | Licensing Kit |
| WALL-E | VA 1-685-920 | WALL-E - Product Development | Style Guide |
| Wendy Darling | VA 124-730 | Disney Character Guide | Pamphlet of Drawings |

Ex. A – Plaintiffs' Copyright Index

### Plaintiff DEI Copyrighted Properties [cont'd.]

| Character | Copyright Reg. No. | Title of Work | Type of Work |
|---|---|---|---|
| White Rabbit | VA 1-969-547 | Disney Alice in Wonderland | Style Guide |
| Winnie the Pooh | VA 58-940 | Pooh – 1 (Winnie the Pooh) | Model Sheet |
| Winnie the Pooh | VA 124-730 | Disney Character Guide | Pamphlet of Drawings |
| Winnie the Pooh | VA 608-558 | "Pooh" – Winnie the Pooh | Licensing Kit |
| Winnie the Pooh | VA 1-369-225 | Winnie the Pooh Foundation Art | Style Guide |
| Woody | VA 735-197 | Toy Story | Style Guide |
| Woody | VAu 455-926 | Toy Story 2 | Style Guide |
| Woody | VAu 337-565 | Toy Story - Woody | Artwork |
| Zero | VA 1-733-698 | Tim Burton's The Nightmare Before Christmas Design Portfolio | Style Guide |

## Ex. A – Plaintiffs' Copyright Index

### Plaintiff Lucasfilm Copyrighted Properties

| Character | Copyright Reg. No. | Title of Work | Type of Work |
|---|---|---|---|
| Darth Vader | VA 1-910-796 | Star Wars: Classics – Guide EV | Style Guide |
| The Mandalorian: The Child | VA 2-180-254 | The Mandalorian: The Child | Style Guide |
| Yoda | VA 1-910-796 | Star Wars: Classics – Guide EV | Style Guide |

# EXHIBIT B

Ex. B – Plaintiffs' Trademark Index

**Plaintiff DEI Trademark Properties [Cont'd.]**

| Mark | Design | Trademark Reg. No. | Date of Issuance | Class |
|---|---|---|---|---|
| BAY LAKE TOWER | BAY LAKE TOWER | 3,832,505 | Aug. 10, 2010 | 043 |
| BIG THUNDER MOUNTAIN RAILROAD | BIG THUNDER MOUNTAIN RAILROAD | 3,093,871 | May 16, 2006 | 041 |
| Brave | BRAVE | 4,764,768 | June 30, 2015 | 025 |
| Brave | BRAVE | 4,764,766 | June 30, 2015 | 041 |
| Cars | Cars | 3,420,795 | April 29, 2008 | 041 |
| Castle | | 4,006,387 | Aug. 2, 2011 | 009 |
| CHESHIRE CAT | CHESHIRE CAT | 3,794,964 | May 25, 2010 | 014, 020, 021, 024, 025, 028 |
| CHIP AND DALE | CHIP AND DALE | 3,900,892 | Jan. 4, 2011 | 016, 020, 021, 025, 028 |
| CINDERELLA | CINDERELLA | 1,964,330 | Mar. 26, 1996 | 025 |

Ex. B – Plaintiffs' Trademark Index

**Plaintiff DEI Trademark Properties [Cont'd.]**

| Mark | Design | Trademark Reg. No. | Date of Issuance | Class |
|------|--------|--------------------|------------------|-------|
| DISNEY | DISNEY | 2,888,282 | Sept. 28, 2004 | 009 |
| DISNEY | DISNEY | 3,088,198 | May 2, 2006 | 025 |
| DISNEY | DISNEY | 3,340,426 | Nov. 20, 2007 | 025 |
| DISNEY | DISNEY | 3,432,510 | May 20, 2008 | 028 |
| DISNEY | DISNEY | 4,042,815 | Oct. 18, 2011 | 003 |
| DISNEY | DISNEY | 4,063,531 | Nov. 29, 2011 | 018, 020, 021, 024 |
| DISNEY | DISNEY | 4,067,997 | Dec. 6, 2011 | 041 |
| DISNEY | DISNEY | 4,208,634 | Sept. 18, 2012 | 026 |
| DISNEY | DISNEY | 5,912,700 | Nov. 19, 2019 | 035 |
| Disney | Disney COLLECTION | 5,312,434 | Oct. 17, 2017 | 025 |
| DISNEY CALIFORNIA ADVENTURE | DISNEY CALIFORNIA ADVENTURE | 4,007,306 | Aug. 2, 2011 | 041 |
| DISNEY DREAM | DISNEY DREAM | 3,948,323 | Apr. 19, 2011 | 041 |
| DISNEY DREAM | DISNEY DREAM | 3,948,324 | Apr. 19, 2011 | 039 |
| DISNEY DREAM | DISNEY DREAM | 3,951,384 | Apr. 26, 2011 | 043 |

Ex. B – Plaintiffs' Trademark Index

## Plaintiff DEI Trademark Properties [cont'd.]

| Mark | Design | Trademark Reg. No. | Date of Issuance | Class |
|---|---|---|---|---|
| Disney Frozen | FROZEN | 4,816,352 | Sep. 22, 2015 | 041 |
| DISNEY FROZEN | DISNEY FROZEN | 5,693,668 | Mar. 5, 2019 | 025 |
| DISNEY MAGIC | DISNEY MAGIC | 2,240,945 | Apr. 20, 1999 | 039 |
| DISNEY MOANA | DISNEY MOANA | 5,311,712 | Oct. 17, 2017 | 041 |
| DISNEY PIXAR BRAVE | DISNEY PIXAR BRAVE | 4,358,315 | June 25, 2013 | 041 |
| Disney Pixar Incredibles 2 | INCREDIBLES 2 | 5,619,254 | Nov. 27, 2018 | 025 |
| Disney Pixar Incredibles 2 | INCREDIBLES 2 | 5,891,734 | Oct. 22, 2019 | 025 |
| Disney Presents the Lion King | THE LION KING | 6,859,232 | Sep. 27, 2022 | 041 |
| DISNEY PRINCESS | DISNEY PRINCESS | 3,367,264 | Jan. 8, 2008 | 025 |
| DISNEY PRINCESS | DISNEY PRINCESS | 3,506,495 | Sept. 23, 2008 | 025 |
| DISNEY RESORTS | DISNEY RESORTS | 4,495,509 | Mar. 11, 2014 | 003 |
| DISNEY SPRINGS | DISNEY SPRINGS | 5,060,045 | Oct. 11, 2016 | 041 |

Ex. B – Plaintiffs' Trademark Index

Plaintiff DEI Trademark Properties [cont'd.]

| Mark | Design | Trademark Reg. No. | Date of Issuance | Class |
|---|---|---|---|---|
| DISNEY SPRINGS | DISNEY SPRINGS | 5,060,046 | Oct. 11, 2016 | 043 |
| DISNEY SPRINGS | DISNEY SPRINGS | 5,073,782 | Nov. 1, 2016 | 035 |
| DISNEY VACATION CLUB | DISNEY VACATION CLUB | 4,076,516 | Dec. 27. 2011 | 043 |
| DISNEY'S ANIMAL KINGDOM | DISNEY'S ANIMAL KINGDOM | 2,189,638 | Sept. 15, 1998 | 041 |
| DISNEY'S BEACH CLUB | DISNEY'S BEACH CLUB | 3,315,476 | Oct. 23, 2007 | 036, 043 |
| DISNEY'S BEAUTY AND THE BEAST | DISNEY'S BEAUTY AND THE BEAST | 2,870,954 | Aug. 10, 2004 | 025 |
| DISNEY'S HOLLYWOOD STUDIOS | DISNEY'S HOLLYWOOD STUDIOS | 3,667,223 | Aug. 11, 2009 | 041 |
| DISNEY'S POLYNESIAN VILLAGE RESORT | DISNEY'S POLYNESIAN VILLAGE RESORT | 4,871,472 | DEC. 15, 2015 | 043 |
| DISNEY'S RETURN TO NEVERLAND | DISNEY'S RETURN TO NEVERLAND | 2,923,690 | Feb. 1, 2005 | 016 |
| Disneyland | Disneyland | 0,857,667 | Sept. 24, 1968 | 041 |
| DISNEYLAND | DISNEYLAND | 1,037,788 | APR. 13, 1976 | 006, 014, 016, 018, 021, 025, 026, 028, 039, 041, 042 |
| DISNEYLAND | DISNEYLAND | 3,330,444 | NOV. 6, 2007 | 035 |

Ex. B – Plaintiffs' Trademark Index

**Plaintiff DEI Trademark Properties [cont'd.]**

| Mark | Design | Trademark Reg. No. | Date of Issuance | Class |
|---|---|---|---|---|
| DISNEYLAND | DISNEYLAND | 3,415,502 | Apr. 22, 2008 | 025 |
| DONALD DUCK | DONALD DUCK | 2,949,699 | May 10, 2005 | 025 |
| DUMBO | DUMBO | 3,846,594 | Sep. 7, 2010 | 009, 014, 016, 018, 020 |
| DUMBO THE FLYING ELEPHANT | DUMBO THE FLYING ELEPHANT | 3,112,603 | July 4, 2006 | 041 |
| EPCOT | EPCOT | 1,380,818 | Jan. 28, 1986 | 041 |
| EPCOT | EPCOT | 3,290,612 | Sept. 11, 2007 | 041 |
| FASTPASS | FASTPASS | 2,402,898 | Nov. 7, 2000 | 041 |
| FINDING DORY | FINDING DORY | 5,086,905 | Nov. 22, 2016 | 025 |
| FINDING DORY | FINDING DORY | 5,301,701 | Oct. 3, 2017 | 041 |
| Finding Nemo | FINDING NEMO | 3,418,785 | Apr. 29, 2008 | 041 |
| FRONTIERLAND | FRONTIERLAND | 0,901,015 | Oct. 13, 1970 | 041 |

Ex. B – Plaintiffs' Trademark Index

## Plaintiff DEI Trademark Properties [cont'd.]

| Mark | Design | Trademark Reg. No. | Date of Issuance | Class |
|---|---|---|---|---|
| Goofy |  | 2,721,608 | June 3, 2003 | 009, 016, 018, 020, 021, 025, 028 |
| GOOFY | **GOOFY** | 4,358,251 | June 25, 2013 | 041 |
| HAUNTED MANSION | **HAUNTED MANSION** | 3,142,876 | Sept. 12, 2006 | 041 |
| INSIDE OUT | INSIDE OUT | 5,915,037 | Nov. 19, 2019 | 025 |
| INSIDE OUT | INSIDE OUT | 5,232,808 | June 27, 2017 | 041 |
| JUNGLE CRUISE | **JUNGLE CRUISE** | 2,969,996 | July 19. 2005 | 41 |
| JUNGLE CRUISE | JUNGLE CRUISE | 6,548,585 | Nov. 2, 2021 | 041 |
| JUNGLE CRUISE | JUNGLE CRUISE | 6,725,221 | May 24, 2022 | 028 |
| JUNGLE CRUISE | JUNGLE CRUISE | 6,725,223 | May 24, 2022 | 025 |
| LIBERTY SQUARE | LIBERTY SQUARE | 3,090,973 | MAY 9, 2006 | 041 |
| LILO AND STITCH | LILO AND STITCH | 2,821,509 | Mar. 9, 2004 | 025 |
| MAGIC KINGDOM | MAGIC KINGDOM | 1,072,396 | Aug. 30, 1977 | 041 |
| MAIN STREET U.S.A. | MAIN STREET, U.S.A. | 0,899,439 | Sept. 22, 1970 | 041 |
| MICKEY MOUSE |  | 0,247,156 | Sept. 18, 1928 | 009 |

**Ex. B – Plaintiffs' Trademark Index**

**Plaintiff DEI Trademark Properties [cont'd.]**

| Mark | Design | Trademark Reg. No. | Date of Issuance | Class |
|---|---|---|---|---|
| MICKEY MOUSE | MICKEY MOUSE | 3,036,883 | Dec. 27, 2005 | 041 |
| MICKEY MOUSE | MICKEY MOUSE | 3,011,935 | Nov. 1, 2005 | 025 |
| MICKEY MOUSE | MICKEY MOUSE | 3,115,395 | July 11, 2006 | 028 |
| MICKEY MOUSE | MICKEY MOUSE | 3,308,015 | Oct. 9, 2007 | 041 |
| MICKEY MOUSE | MICKEY MOUSE | 3,588,873 | Mar. 10, 2009 | 009 |
| MICKEY MOUSE | MICKEY MOUSE | 3,750.188 | Feb. 16, 2010 | 009, 016, 018, 025 |
| Mickey Mouse |  | 2,704,887 | Apr. 8, 2003 | 016, 018, 020, 021, 024, 025, 028 |
| Mickey Mouse |  | 3,580,903 | Feb. 24, 2005 | 25 |
| Mickey Mouse |  | 3,587,508 | Mar. 10, 2009 | 021 |
| Mickey Mouse |  | 5,464,657 | May 8, 2018 | 041 |

**Ex. B – Plaintiffs' Trademark Index**

**Plaintiff DEI Trademark Properties [cont'd.]**

| Mark | Design | Trademark Reg. No. | Date of Issuance | Class |
|---|---|---|---|---|
| Mickey Mouse Ear Hat |  | 1,524,601 | Feb. 14, 1989 | 025 |
| MINNIE MOUSE | MINNIE MOUSE | 3,002,502 | Sept. 27, 2005 | 025 |
| MINNIE MOUSE | MINNIE MOUSE | 3,131,283 | Aug. 15, 2006 | 041 |
| MINNIE MOUSE | MINNIE MOUSE | 3,562,424 | Feb. 19, 2009 | 016 |
| MINNIE MOUSE | MINNIE MOUSE | 3,588,872 | Mar. 10, 2009 | 014, 018, 020, 021, 024 |
| MINNIE MOUSE | MINNIE MOUSE | 3,767,850 | Mar. 30, 2010 | 025, 028 |
| MINNIE MOUSE | MINNIE MOUSE | 3,915,194 | Feb. 1, 2011 | 003 |
| MINNIE MOUSE | MINNIE MOUSE | 4,112,058 | Mar. 13, 2012 | 041 |
| Minnie Mouse |  | 5,027,915 | Aug. 23, 2016 | 028 |
| Oswald the Lucky Rabbit |  | 5,317,926 | Oct. 24, 2017 | 025 |

Ex. B – Plaintiffs' Trademark Index

## Plaintiff DEI Trademark Properties [cont'd.]

| Mark | Design | Trademark Reg. No. | Date of Issuance | Class |
|---|---|---|---|---|
| PETER PAN | PETER PAN | 3,655,992 | July 14, 2009 | 025 |
| PETER PAN | PETER PAN | 3,662,111 | July 28, 2009 | 041 |
| PETER PAN'S FLIGHT | PETER PAN'S FLIGHT | 2,969,993 | July 19, 2005 | 041 |
| PIRATES OF THE CARIBBEAN | PIRATES OF THE CARIBBEAN | 3,428,446 | May 13, 2008 | 025 |
| PIRATES OF THE CARIBBEAN | PIRATES OF THE CARIBBEAN | 3,532,604 | Nov. 11, 2008 | 041 |
| PLUTO | PLUTO | 4,309,514 | Mar. 26, 2013 | 025 |
| Pluto |  | 2,707,323 | Apr. 15, 2003 | 016, 018, 021, 024, 025, 028 |
| POOH | POOH | 3,395,652 | Mar. 11, 2008 | |
| SPACE 220 | SPACE 220 | 6,725,275 | May 24, 2022 | 043 |
| SPACE MOUNTAIN | SPACE MOUNTAIN | 1,102,369 | Sept. 12, 1978 | 041 |
| THE DISNEY CHANNEL | THE DISNEY CHANNEL | 1,343,334 | June 18, 1985 | 038 |
| THE JUNGLE BOOK | THE JUNGLE BOOK | 5,932,232 | Dec. 10, 2019 | 025 |

Ex. B – Plaintiffs' Trademark Index

## Plaintiff DEI Trademark Properties [Cont'd.]

| Mark | Design | Trademark Reg. No. | Date of Issuance | Class |
|---|---|---|---|---|
| THE JUNGLE BOOK | THE JUNGLE BOOK | 5,932,233 | Dec. 10, 2019 | 041 |
| THE LION KING | THE LION KING | 1,940,193 | Dec. 5, 1995 | 025 |
| THE LITTLE MERMAID | THE LITTLE MERMAID | 4,119,509 | Mar. 27, 2012 | 041 |
| Three Circle Mouse Ear Device |  | 2,784,058 | Nov. 18, 2003 | 025 |
| Three Circle Mouse Ear Device |  | 5,670,367 | Feb. 5, 2019 | 014 |
| Tinker Bell |  | 3,370,950 | Jan. 15, 2008 | 025 |
| TINKER BELL | TINKER BELL | 3,493,124 | Aug. 26, 2008 | 025 |
| TINKER BELL | TINKER BELL | 4,023,555 | Sept. 6, 2011 | 041 |
| TINKERBELL | TINKERBELL | 1,308,026 | Dec. 4, 1984 | 018 |
| TINKERBELL | TINKERBELL | 1,613,931 | Sep. 18, 1990 | 025 |

## Ex. B – Plaintiffs' Trademark Index

### Plaintiff DEI Trademark Properties [Cont'd.]

| Mark | Design | Trademark Reg. No. | Date of Issuance | Class |
|---|---|---|---|---|
| TINKERBELL | TINKERBELL | 1,634,888 | Feb. 12, 1991 | 025 |
| TINKERBELL | TINKERBELL | 3,580,887 | Feb. 24, 2009 | 025 |
| TOONTOWN | TOONTOWN | 1,768,253 | Apr. 27, 1993 | 041 |
| TOY STORY | TOY STORY | 3,971,114 | May 31, 2011 | 041 |
| TRADER SAM'S GROG GROTTO | TRADER SAM'S GROG GROTTO | 4,774,057 | JULY 14, 2015 | 043 |
| TURNING RED | TURNING RED | 6,810,470 | Aug. 2, 2022 | 025 |
| TWEEDLEDUM AND TWEEDLEDEE | TWEEDLEDUM AND TWEEDLEDEE | 4,972,769 | June 7, 2016 | 025 |
| UP |  | 3,738,165 | Jan. 12, 2010 | 041 |
| UP |  | 3,738,168 | Jan. 12, 2010 | 025 |
| WALL ·E | WALL ·E | 3,528,986 | NOV. 4, 2008 | 016 |
| WALT DISNEY | WALT DISNEY | 4,006,400 | Aug. 2, 2011 | 041 |
| WALT DISNEY WORLD | WALT DISNEY WORLD | 0,980,955 | Mar. 26, 1974 | 016, 025, 039, 041, 042 |

Ex. B – Plaintiffs' Trademark Index

**Plaintiff DEI Trademark Properties [cont'd.]**

| Mark | Design | Trademark Reg. No. | Date of Issuance | Class |
|---|---|---|---|---|
| WALT DISNEY WORLD | WALT DISNEY WORLD | 3,142,890 | May 24, 2005 | 039 |
| Walt Disney's Alice in Wonderland |  | 2,895,968 | Oct. 19, 2004 | 009, 014, 016, 018, 021, 024, 025, 028 |
| Walt Disney's Bambi |  | 2,889,386 | Sept. 28, 2004 | 009, 014, 016, 018, 021, 024, 025, 028 |
| Walt Disney's Cinderella |  | 3,057,988 | Feb. 7, 2006 | 009, 014, 016, 018, 021, 024, 025, 028 |
| Walt Disney's Dumbo |  | 2,895,969 | Oct. 19, 2004 | 009, 014, 016, 018, 021, 024, 025, 028 |
| Walt Disney's Peter Pan |  | 2,895,967 | Oct. 19, 2004 | 009, 014, 016, 018, 021, 024, 025, 028 |

Ex. B – Plaintiffs' Trademark Index

**Plaintiff DEI Trademark Properties [cont'd.]**

| Mark | Design | Trademark Reg. No. | Date of Issuance | Class |
|---|---|---|---|---|
| Walt Disney's Sleeping Beauty |  | 2,895,966 | Oct. 19, 2004 | 009, 014, 016, 018, 021, 028 |
| Walt Disney's Snow White and the Seven Dwarfs |  | 2,891,463 | Oct. 5, 2004 | 003, 009, 014, 016, 018, 021, 024, 025, 028 |
| WHERE DREAMS COME TRUE | WHERE DREAMS COME TRUE | 3,416,077 | Apr. 22, 2008 | 041f |
| WINNIE THE POOH | WINNIE THE POOH | 5,932,484 | Dec. 10, 2019 | 025 |
| WINNIE THE POOH | **WINNIE THE POOH** | 3,344,934 | Nov. 27, 2007 | 041 |
| ZOOTOPIA | ZOOTOPIA | 4,961,690 | May 17, 2016 | 025 |
| ZOOTOPIA | ZOOTOPIA | 5,043,023 | Sept. 13, 2016 | 041 |

**Ex. B – Plaintiffs' Trademark Index**

**Plaintiff Lucasfilm Trademark Properties**

| Mark | Design | Trademark Reg. No. | Date of Issuance | Class |
|---|---|---|---|---|
| Darth Vader |  | 3,443,878 | June 10, 2008 | 025, 028 |
| Darth Vader |  | 3,646,330 | June 30, 2009 | 025, 028 |
| Darth Vader |  | 3,443,879 | June 10, 2008 | 025, 028 |
| Darth Vader |  | 3,646,331 | June 30, 2009 | 025, 028 |
| MAY THE 4TH BE WITH YOU | MAY THE 4TH BE WITH YOU | 4,605,773 | Dec. 20, 2011 | 041 |
| MAY THE 4TH BE WITH YOU | MAY THE 4TH BE WITH YOU | 5,087,060 | Nov. 22, 2016 | 025 |
| STAR WARS | STAR WARS | 2,565,479 | Apr. 30, 2002 | 035 |
| Star Wars |  | 3,503,765 | Sept. 23, 2008 | 016, 025, 041 |

Ex. B – Plaintiffs' Trademark Index

## Plaintiff Lucasfilm Trademark Properties

| Yoda | YODA | 3,716,938 | Nov. 24, 2009 | 016, 025 |
|------|------|-----------|---------------|----------|