UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DISNEY ENTERPRISES, INC.,
LUCASFILM LTD. LLC, and
LUCASFILM ENTERTAINMENT
COMPANY LTD. LLC,

*Plaintiffs,*

-against-

THE SECRET DIS GROUP LLC,
POPSELLA INC., CHRISTOPHER B.
MARTIN, and HANNAH MARTIN,

*Defendants.*

Case No.: 6:22-cv-02417-RBD-LHP

**PLAINTIFFS' MOTION & MEMORANDUM
TO COMPEL DISCOVERY AND AWARD SANCTIONS**

**MOTION**

Pursuant to the Court's Endorsed Order of Feb. 2, 2024 (Doc. No. 33), Plaintiffs, Disney Enterprises, Inc., Lucasfilm Ltd. LLC, and Lucasfilm Entertainment Company Ltd. LLC., hereby move this Court to compel Defendants, The Secret Dis Group LLC ("SDG"), Popsella Inc. ("Popsella"), Christopher Martin ("Def. CM"), and Hannah Martin ("Def. HM") to: a) appear for in-person depositions in Orlando before close of discovery; b) provide Interrogatory Answers signed by Defendants' Lead Counsel, Richard Wolfe; c)

provide clarification on duplicate Response documents; d) provide a privilege log; and e) provide amended Responses and supplementary document production as related to unsubstantiated objections.

Taking into account the current discovery deadline of Mar. 4, 2024, Plaintiffs respectfully ask the Court to intervene and compel Defendants to remedy the outstanding discovery issues without further delay, and award sanctions related to this unnecessary and wasteful motion practice.

## MEMORANDUM OF LAW

Plaintiffs have brought this action against Defendants for: a) copyright infringement; b) trademark infringement and counterfeiting; c) unfair competition and false designation of origin; and d) cybersquatting. Defendants operate an online retail sales business that includes the manufacturing, marketing, selling, offering for sale, and distributing of counterfeit and/or infringing goods which reproduce, depict, and/or incorporate Plaintiffs' intellectual property ("Infringing Services"). The goods that infringe or otherwise trade upon Plaintiffs' copyrights and trademarks, include face masks, magnets, hair accessories, mouse ear headwear, stickers, decals, key chains, hats, fanny packs, buttons, and tote bags ("Unauthorized Merchandise"). Defendants have conducted such Infringing Services and offered such Unauthorized Merchandise via dozens of web-based platforms and social media accounts – both, in the name of the business entities and individual Defendants. Defendants have built numerous businesses by

intentionally fostering confusion between with Plaintiffs' brands and continued unauthorized use of Plaintiffs' intellectual property.

Plaintiffs issued written discovery in this matter on Oct. 27, 2023; Plaintiffs' First Requests for Production of Documents and Things ("Plaintiffs' Requests") (Exs. A-1 – A-4), Plaintiffs' First Interrogatories (Exs. B-1 – B-4). On Feb. 1-2, 2024 [original due date: Nov. 27, 2023], Defendants issued their written discovery responses; Defendants' Responses to Plaintiffs' Requests for Production ("Defendants' Resp.") (Exs. C-1 – C-4), Defendants' Interrogatory Answers and Objections ("Interrogatory Answers") (Exs. D-1 – D-4).

I.  **Compel Defendants Attendance at Depositions**

Plaintiffs first contacted Defendant' regarding deposition availability on Nov. 7, 2023, requesting to conduct depositions before the end of the year. On Dec. 14, 2023, the parties tentatively scheduled Defendants' depositions for Jan. 18-19, 2024, conditioned on Plaintiffs receiving Defendants' past due Responses, Interrogatory Answers, and document production by Dec. 22, 2023; Defendants failed to produce any discovery responses or documents by this date. On Jan. 9, 2024, Defendants produced unbates-stamped documents which Mason Wolfe ("Atty. MW"), an attorney working on behalf of Defendants' lead counsel, Richard Wolfe ("Lead Counsel RW"), represented were Defendants collective and undifferentiated responses to Plaintiffs' Requests (despite Plaintiffs' Requests being specifically tailored to each of the four Defendants).

On Jan. 12, 2024, having still not received Defendants' Responses or Interrogatory Answers, Plaintiffs informed Atty. MW that Defendants' depositions would have to be rescheduled prior to the discovery deadline. On Jan. 31, 2024, during a Court ordered meet and confer (*see* Doc. No. 32), Plaintiffs' counsel requested to depose Defendants in the last two weeks of February, requiring a total of three days (or four if Def. HM required an interpreter as previously requested). Atty. MW responded that Def. CM and Def. HM would be vacationing in Asia from Feb. 12 – Mar. 5, 2024, and therefore unavailable for depositions. Atty. MW represented that Defendants could be deposed Mar. 11-13, 2024. When Plaintiffs' counsel rejected the dates as after the discovery deadline, Atty. MW offered to produce Defendants via remote deposition Feb. 26-29, 2024, for three hours a day from 9:00 a.m. - 12:00 p.m. Plaintiffs rejected this offer as unreasonable given that the time allotted (12 hrs. total for four defendants) would be insufficient to address the hundreds of documents relevant to Defendants' conduct at issue in this matter. The remote nature of the offered depositions and Def. HM's request for a translator further showed this offer to be unworkable.

Accordingly, Plaintiffs ask this Court to enter an Order compelling Defendants be produced for in-person depositions in Orlando [where Defendants reside] over three days [four days if a translator is required] prior to the Mar. 4, 2024, discovery deadline. *See* Case Mgmt. and Scheduling Order ("CMSO") (Doc. No. 17). To ensure productive depositions, Plaintiffs also request such depositions

4

occur at least seven business days after Defendants produce all additional documents affected by the remainder of this Motion to Compel (the "Motion").

## II. Remedy Facial Deficiencies of Defendants' Answers and Responses

### A. Compel Interrogatory Answers Signed by Counsel

On. Feb. 1, 2024, Atty. MW served the Interrogatory Answers. Lead Counsel RW failed to sign Defendants' objections to Plaintiffs' Interrogatories as specifically required by Fed. R. Civ. P. 33 (b)(5). Plaintiffs ask this Court for an Order compelling Lead Counsel RW to sign the Interrogatory Answers.

### B. Compel Clarification of Duplicate Response

Plaintiffs received a responsive document titled "*Defendant Christopher B. Martin's and Hannah Martin's Response to Plaintiffs' First Requests for Production of Documents and Things to Defendant Christopher B. Martin*." It is unclear if the referenced document is wholly incorrect, a duplicate of the Responses on behalf of Def. CM ("Def. CM Resp.") or intended to be the Responses of Def. HM ("Def. HM Resp.").[1] Plaintiffs ask this Court for an Order compelling Defendants to clarify the nature of the referenced document.

### C. Compel Production of a Privilege Log

As noted in Section III(B), Def. CM and Def. HM cited spousal privilege to evade their discovery obligations for thirty-seven of Plaintiffs' Requests. To the

---

[1] In the interest of judicial economy, Plaintiffs shall temporarily assume the document's title is a typographical error and treat the document as the Def. HM Resp. for purposes of this Motion.

5

extent Defendants are permitted to assert such privilege in response to Plaintiffs' Requests, Plaintiffs ask the Court to enter an Order compelling Defendants to produce a privilege log pursuant to Fed. R. Civ. P. 26(B)(5)(A).[2]

### III. Compel Amended Responses; Supplementary Document Production [3]

Defendants' Resp. are substantively deficient as follows: a) boilerplate responses with no specificity as to objections; b) inappropriate and unsubstantiated spousal privilege objections; c) ignore plain definitions provided in Plaintiffs' Requests; d) ignore the allegations found in the Complaint concerning the subject matter of this action; and e) object to producing basic financial and accounting records regarding Defendants' Unauthorized Merchandise and Infringing Services which are at the heart of this matter.

#### A. Boilerplate Objections

Defendants have made unsupported boilerplate objections to most of Plaintiffs' Requests, claiming such Requests are "overbroad in scope, time and

---

[2] See *Tyne v. Time Warner Enter.*, 212 F.R.D. 596, 599 (M.D. Fla. 2002) (party invoking privilege has burden of proving its existence.); *Century Surety v. Lay*, No. 6:14-cv-14-ORl-41TBS, 2014 WL 12614497, at *3 (M.D. Fla. Oct. 2, 2014) ("party asserting privilege must produce a log of the withheld documents, as required by Federal Rules."); *Spitznagel v. R&D Italia,* No. 2:09-cv-824-FtM-29SPC, 2011 WL 90052, at *4 (M.D. Fla. Mar. 17, 2011) ("party asserting the privilege must comply with Fed. R. Civ. P. 26 by filing a privilege log. Failure to file a privilege log can result in a waiver of the privilege.").

[3] Section 3 of this Motion addresses the substantive and blatant deficiencies in Defendants' Responses. Plaintiffs admit that such deficiencies were not discussed in the failed meet and confer as the Responses were produced two days later. However, given the Court's direction to file this Motion, the related briefing schedule, the Mar. 4, 2024, discovery deadline, and Defendants' clearly expressed desire to avoid discovery prior to mediation, Plaintiffs believe they are compelled to raise such substantive issues in this Motion.

subject matter"[4] and "highly overbroad"[5] or "vague and ambiguous,"[6] all without providing any specificity as to how such objections apply.

Pursuant to the CMSO, Part II(E) "Responses to discovery requests must be timely, complete, and devoid of boilerplate, non-specific objections. **Responding with boilerplate will result in the waiver of the objections**." Further, the Middle District typically renders boilerplate objections as meaningless, meritless, and ripe to be overruled.[7] Therefore, Plaintiffs' ask this Court to Order the objections waived and require Defendants provide all relevant documentation.

### B.    Objections Based on Spousal Privilege

Defendants have provided boilerplate spousal privilege objections to Plaintiffs' Requests based on the marital status of Def. CM and Def. HM. Plaintiffs'

---

[4] Responses on behalf of SDG ("SDG Resp.") 7-13, 15-16, 19-21, 23-28, 30-31, 45, 54, and 56; Ex. C-1, at p.4-14, 18, 21-22. Responses on behalf of Popsella ("Popsella Resp.") 4, 7-10, 12, 17-21, 23-26, 28-29, 42, 49, and 51; Ex. C-2, at p.2, 4-7, 9-13, 17, 19-20. Def. CM Resp. 3-13, 15-19, 21-23, 26-27, 39, and 47; Ex. C-3, at p.3-12, 17, 19. Def. HM Resp. 3-13, 15-19, 21-23, 26-27, 39, and 47; Ex. C-4, at p.3-12, 17, 19.

[5] Notably, the Requests deemed "highly overbroad" all pertain to Plaintiffs' ESI-related Requests. Despite representing during the parties' Case Mgmt. Conference that ESI production would not be an issue, Defendants have ignored the majority of such ESI-based Requests, and not produced a single document in its native format (per the instructions in Plaintiffs Requests).

[6] SDG Resp. 39, 43, 59, and 62; Ex. C-1, at p.16, 18, 22, 23. Popsella Resp. 38, 40, 46, 56-58; Ex. C-2, at p.15-16, 18, 21. Def. CM Resp. 33, 37, and 50-52; Ex. C-3, at p.14-16, 20-21. Def. HM Resp. 33, 37, and 50-52; Ex. C-4, at p.14-16, 20-21.

[7] *See Asphalt Paving Sys., Inc. v. Gen'l Combustion Corp.*, No. 6:15-cv-49-Orl- 41TBS, 2016 WL 3167712, at *2 (M.D. Fla. June 7, 2016) ("The Court does not consider frivolous, conclusory, general, or boilerplate objections."); *Siddiq v. Saudi Arabian Airlines Corp.*, No. 6:11- cv-69-Orl-19GJK, 2011 WL 6936485, at *3 (M.D. Fla. Dec. 7, 2011) ("Objections which state that a discovery request is 'vague, overly broad, or unduly burdensome' are, by themselves, meaningless, and are deemed without merit by this Court."); Middle Dist. Discovery (2021) at 15 ("Objections to requests for production should be specific, not generalized. . . Boilerplate objections such as 'the request is overly broad, unduly burdensome, and outside the scope of permissible discovery' are insufficient without a full, fair explanation particular to the facts of the case.").

Requests to which Defendants have asserted spousal privilege, all concern documents and communications related to the SDG and Popsella businesses as owned, operated, and managed by Def. CM and Def. HM.[8] By way of example:

> 7. All Documents and Communications between SDG and SDG Agents concerning the SDG Social Media, user activity, Infringing Services, and Unauthorized Merchandise.
>
> ANSWER: Objection: Defendant objects to this Request for Production in that the Request is overbroad in scope, time and subject matter, and it seeks information which is protected under the marital privilege as the only SDG agent are Chris and Hannah Martin who are married.

SDG Resp. 7; Ex. C-1, at p.4.

As background, SDG's Interrogatory Answers ("SDG Answers") and Popsella's Interrogatory Answers ("Popsella Answers") identify Def. CM as the sole manager and officer of SDG and Popsella, and Def. CM and Def. HM as the sole employees of the same. *See* SDG Answers 2, 3, 5, and 6; Ex. D-1, at p.2-4. Similarly, Def. CM and Def. HM are identified as the sole fact witnesses concerning the operation of SDG and Popsella. *See* SDG Answers 19; Ex. D-1, at p.13, and Popsella Answers 18; Ex. D-2, at p.10. Finally, Defendants assert that Def. CM and Def. HM operate and manage the SDG and Popsella businesses out of their home. *See* SDG Answers 8; Ex. D-1, at p.5, and Popsella Answers 8; Ex. D-1, at p.5.

This Court has previously determined that spousal privilege only protects communications and documents "intended to be confidential" and "the fact that

---

[8] SDG Resp. 7-13, 15, 16, 20-22, and 25; Ex. C-1, at p. 4-12. Popsella Resp. 7-10, 12, and 16; Ex. C-2, at p.4-8. Def. CM Resp. 4-10, 14, and 35; Ex. C-3, at p.3-8, 15. Def. HM Resp. 4-10, 14, and 35; Ex. C-4, at p.3-8, 15.

the communication relates to business may demonstrate the intent that a communication was not intended to be confidential." *Hanger Orthopedic Group, Inc. v. McMurray*, 181 F.R.D. 525, 529-30 (M.D. Fla. 1998).[9]

> *The fact that the communication relates to business transactions may show it was not intended as confidential. Examples are statements about business agreements between spouses, or business matters transacted by one spouse as agent for the other, or about property or conveyances … To cloak them with privilege when the transactions come into litigation would be of special inconvenience and injustice.*

*Hanger*, at 530 (citing to *McCormick on Evidence*, § 80 (4th Ed. 1992) for the proposition that business communications between spouses may not be protected as they are not intended to be confidential). This Court concluded that "no reasonable person could have believed that business-related communications between [married defendants] about the formation and management of [their business] were made in confidence" and "[n]either [married defendant] may hide behind the husband-wife privilege in preventing disclosure" of relevant communications. *Hanger*, at 532.

Defendants have failed to explain how the spousal privilege would protect documents and communications between Def. CM and Def. HM concerning the SDG and Popsella businesses that such Defendants jointly operate from their home, or even identify what documents might be covered by this privilege.[10]

---

[9] See also *Tropical Marketing & Consulting, LLC v. Glock, Inc.*, No. 6:12-cv-1388-Orl-36TBS, 2012 WL 5431002; and Fla. Stat. 90.504.

[10] *Classic Soft Trim, Inc. v. Albert, et al.*, Case. No. 6:18-cv-1237-Orl-78GJK, 2020 WL 6730924 (M.D. Fla. Aug. 18, 2020) ("the party asserting a privilege has the burden to show that the privilege

Where a party suggests there may be documents covered by spousal privilege but fails to identify the documents, the assertion of spousal privilege must be denied as it is "not sufficient and the Court will not prohibit discovery on such an unsubstantiated and speculative argument." *Weber v. Finker*, Case No. 3:07-mc-27, 2008 WL 1771822, at *4, 2008 U.S. Dist. LEXIS 31067, at *43 (M.D. Fla. Apr. 15, 2008). Accordingly, Plaintiffs' ask this Court to Order the Defendants to produce all responsive documents to the above referenced Requests where the Defendants have asserted this unsupported spousal privilege objection.

### C. Objections Related to Unauthorized Merchandise

#### 1. Definition of Unauthorized Merchandise

In an effort to conduct meaningful discovery on Defendants' Infringing Services and Unauthorized Merchandise, Plaintiffs' Requests contain specific defined terms – Definitions 20-23 – concerning the copyrighted properties and trademarks at issue, with such definitions tracking the intellectual property identified in the Complaint. *See* Plaintiffs' Requests; Exs. A-1 – A-4, at p.8. These definitions provide an attached index of all applicable copyrighted and trademarked properties and are collectively referred to in the Requests as "Plaintiffs' Properties." Additionally, Definition 36 of the Request goes on to define "Unauthorized Merchandise" as:

---

applies."); *FTC v. NPB Advertising, Inc.*, Case. No. 8:14-cv-1155-T-23-TGW, 2017 WL 11682312, at *3 (M.D. Fla. Apr. 14, 2017).

10

> [G]oods that infringe or otherwise trade upon Plaintiffs' Properties, including such unauthorized products as identified in the Complaint and which are subject of the Litigation, as well as any part(s) or component(s) utilized in the manufacture or creation of such unauthorized products.

*See* Plaintiffs' Requests; Exs. A-1 – A-4, at p.13. Defendants object to the defined term "Unauthorized Merchandise" as a basis for not producing documents for twenty-seven Requests on grounds that the term "assumes facts not in evidence."[11] Such objections are particularly egregious given that they're abandoned in the remainder of Defendants' Resp. to Requests of the same nature. See example:

> **17. All Documents and Communications relating to the sale or distribution of Unauthorized Merchandise by SDG, including that which evidences fulfillment of orders and/or purchases conducted online and offline.**
>
> **ANSWER: The documents in response to this request will be provided or have already been provided, with the exception of communications between Chris and Hannah Martin.**

SDG Resp. 17; Ex. C-1, at p.10. Clearly this objection has no basis, and Defendants should be compelled to produce amended Responses and documents to the relevant Requests.

### 2. Scope of Unauthorized Merchandise

Defendants have objected to production of documents related to communications between the Defendants and its suppliers of Unauthorized Merchandise, including those supplying or producing mouse ear headbands, with

---

[11] SDG Resp. 9(b) and (c), 10-13, and 16; Ex. C-1, at p.5-9. Popsella Resp. 9(b) and (c), 10, 12-13, and 15; Ex. C-2, at p.5-8. Def. CM Resp. 6(b) and (c), 7-10, and 14; Ex. C-3, at p.5-6, 8. Def. HM Resp. 6(b) and (c), 7-10, and 14; Ex. C-4, at p.5-6, 8.

the argument that "'Mouse Ear Headbands', are not a subject of this litigation. Plaintiff has no patent [sic] infringement claims at issue in 'mouse headbands' either." *See* SDG Resp. 14; Ex. C-1, at p. 8 and Def. CM Resp. 11; Ex. C-3, at p.7.

Throughout the Complaint, Plaintiffs specifically identify "mouse ear headbands" as part of the Unauthorized Merchandise at issue in this matter. For example: the photo chart comparing representative Unauthorized Merchandise and Plaintiffs' respective infringed copyrighted properties and trademarks (Compl. ¶ 18); Count I noted as Plaintiffs' copyright infringement claim, where Plaintiffs identify the infringing product by reference in six exhibits;[12] and Count II noted as Plaintiffs' trademark infringement claim, where Plaintiffs identify the infringing products by reference to the same exhibits. Consequently, Defendants' objection that the 'mouse ear headbands' are not a part of this litigation is unfounded and indeed slightly bizarre. Plaintiffs' request this Court enter an Order compelling production of all relevant documents concerning the 'mouse ear headbands' manufactured, imported, offered for sale, or sold by Defendants.

### D. Objections Related to Financial Documents

Defendants' Responses object to the production of all financial documents related to their sale, purchase, offer for sale, and distribution of Unauthorized

---

[12] Compl. Exs. D, F, I, L, and M, These Exhibits provide hundreds of screenshots of Defendants' websites, Facebook pages, Instagram, Etsy, etc., offering for sale the infringing 'mouse ear headbands' designs at issue in this matter.

Merchandise, or income derived from the operation of the Infringing Services.[13] Consistent with these objections, Defendants have failed to produce any documents concerning the same to date. By way of example, see SDG Responses:

> 19. Documents sufficient to show the Gross Revenue generated from SDG Site and SDG Social Media paid membership(s) and subscription service registration(s).
>
> ANSWER: Objection: Defendant objects to this Request for Production in that the Request is overbroad in scope, time and subject matter and it seeks information is not limited to the issues in the Complaint, which is not relevant and will not lead to discoverable admissible information. Additionally this request seeks confidential trade secret information.
>
> 22. All Documents and Communications concerning compensation or monetary payment(s) issued from SDG to any of the following [with the response to this Request reflecting the same such separation as designated below]: a) Defendant CBM, b) Defendant HVM, c) Any SDG officers or directors, other than Defendant CBM or Defendant HVM, d) Suppliers, e) Partner entities or individuals, f) Third-party vendors
>
> ANSWER: Objection: Defendant objects to this Request for Production in that the Request is overbroad in scope, time and subject matter and it seeks information is not limited to the issues in the Complaint, which is not relevant and will not lead to discoverable admissible information. Specifically it also does not request information even related to the specific allegedly infringing merchandise and instead seeks documents related to all merchandise, sales, payments, expenses, etc of the Company.

This Court has found that financial and accounting documents wholly relevant in matters involving claims under the Lanham Act, specifically documents such as balance statements, income statements, and tax returns. *Pro Video Instruments, LLC v. Fiber, Inc.*, No. 6:18-cv-1823-orl-31LRH, 2019 WL 13067426, at *3 (M.D. Fla. Nov. 21, 2019).

---

[13] SDG Resp. 15-17, and 19-23; Ex. C-1, at p.9-12. Popsella Resp. 14-26; Ex. C-2, at p.8-12. Def. CM Resp. 12-24; Ex. C-3, at p.8-10. Def. HM Resp. 12-24; Ex. C-4, at p.8-10.

Plaintiffs' discovery concerning financial documents related to the Defendants' sale, distribution, importation and offer for sale of the Unauthorized Merchandise and Infringing Services is clearly relevant to Plaintiffs' claims to show, among other things: a) the volume and scope of the Defendants' infringing conduct; b) the individual Defendants' right and ability to control the corporate Defendants' and their direct pecuniary gain from these operations; c) the channels pecuniary gain received from Defendants through their online marketing and monetization operations; and d) to better measure monetary relief Plaintiffs may be entitled to under its copyright and trademark infringement claims. *See* 17 U.S.C. § 504 (a) and (c), and 15 U.S.C. § 1117(a) and (c). As such, Plaintiffs ask this Court to enter an Order deeming the referenced objections as waived, and compelling the production of all relevant documents.

## IV.  Enter Sanctions Against Defendants

Pursuant to the CMSO as well as the Magistrate's Standing Order on Discovery Motions ("Standing Order") (Doc. No. 19), Plaintiffs respectfully request this Court to enter sanctions against Defendants in the form of an award of Plaintiffs' reasonable attorney's fees and costs.

As grounds for this relief, Plaintiffs would show that Plaintiffs were first required to file a Short-Form Motion to Compel (Doc. No. 30), seeking Court intervention requiring Lead Counsel RW to fulfill discovery obligations in accordance with the CMSO and Standing Order, and conduct a meet and confer.

The Short-Form Motion resulted in an Endorsed Order (Doc. No. 31) directing Lead Counsel RW to respond, which was ignored. This lead to the Court's Jan. 30, 2024, Order (Doc. No. 32), requiring Lead Counsel RW to "conduct a meet and confer" on or before Feb. 1, 2024. While a meet and confer conference was subsequently held on Jan. 31, 2024, Lead Counsel RW did not materially participate as he attended another call during the conference and exited over twenty min. before the conference ended. In accordance with the Order, Plaintiffs' counsel relayed this fact to the Court through a Status Report (the "Report') on Feb. 2, 2024. (Doc. No. 33). This Report resulted in the Court ordering Plaintiffs to file the instant Motion. *See* Doc. No. 35.

Given this history of noncompliance with the Court's CMSO and Mag. Dis. Order, concerning the scheduling of depositions and providing timely and complete responses to written discovery, as well as the basic and substantive deficiencies of Defendants' written discovery responses (as noted above), Plaintiffs believe this Motion is an appropriate tool for the Court to enter a sanction order. In that regard, Plaintiffs request this Court to award Plaintiffs' reasonable attorney's fees and costs resulting from the recent unnecessary motion practice. *See* Doc. Nos. 30-35.

## LOCAL RULE 3.01(g) CERTIFICATION

Plaintiffs' undersigned counsel certifies that the instant Motion is filed in response to the Court's Endorsed Order (Doc. No. 35), with this Motion setting forth the unresolved discovery matters discussed during the parties' noncompliant meet and confer [Jan. 31, 2024] along with related deficiencies as to Defendants' discovery responses produced after the referenced meet and confer.

Dated: February 6, 2024                              Respectfully submitted,

                                                           /s/ Kimberly A. Harchuck
                                                           Kimberly A. Harchuck, Esq.
                                                           Florida Bar No.: 0064852
                                                           Michael W. O. Holihan, Esq.
                                                           Florida Bar No.: 0782165
                                                           Holihan Law
                                                           1101 North Lake Destiny Rd., Ste 275
                                                           Maitland, Florida 32751
                                                           Telephone: (407) 660-8575
                                                           michael.holihan@holihanlaw.com
                                                           kimberly.harchuck@holihanlaw.com
                                                           Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2024, a true and correct copy of the foregoing has been filed with the Clerk of the Court via the CM/ECF system which will furnish a copy to counsel of record.

/s/ Kimberly A. Harchuck
Kimberly A. Harchuck, Esq.
Florida Bar No.: 0064852
Michael W. O. Holihan, Esq.
Florida Bar No.: 0782165
Holihan Law
1101 North Lake Destiny Rd., Ste 275
Maitland, Florida 32751
Telephone: (407) 660-8575
michael.holihan@holihanlaw.com
kimberly.harchuck@holihanlaw.com
Counsel for Plaintiffs