# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

DISNEY ENTERPRISES, INC.,
LUCASFILM LTD. LLC and
LUCASFILM ENTERTAINMENT
COMPANY LTD. LLC,

               Plaintiffs,

v.                                                              Case No:   6:22-cv-2417-RBD-LHP

THE SECRET DIS GROUP LLC,
POPSELLA INC., CHRISTOPHER B.
MARTIN and HANNAH MARTIN,

               Defendants

_____

## ORDER

This cause came on for consideration without oral argument on the following

motion filed herein:

> **MOTION:   PLAINTIFFS' MOTION & MEMORANDUM TO COMPEL DISCOVERY AND AWARD SANCTIONS (Doc. No. 37)**
>
> **FILED:   February 6, 2024**
>
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED in part and DENIED in part**.

Discovery in this matter has been open since March 2023, and the discovery deadline is March 4, 2024.   Doc. No. 17; *see also* Doc. No. 16; Fed. R. Civ. P. 26(d)(1). Now before the Court is Plaintiffs' February 6, 2024 Motion & Memorandum to Compel Discovery and Award Sanctions, which is based on Plaintiffs' First Interrogatories and First Requests for Production ("RFPs") served on each of the Defendants on October 27, 2023.   *See* Doc. No. 37 (and related attachments).   This motion follows a Court-ordered conferral by the parties that occurred on January 31, 2024, followed by Defendants' production of written discovery on February 1–2, 2024.   *See* Doc. Nos. 32, 33, 36.

In the motion, Plaintiffs seek the following relief: (1) each Defendant's appearance for in-person deposition in Orlando, Florida prior to the March 4, 2024 close of discovery; (2) Interrogatory answers for each Defendant signed by Defendants' lead counsel, Richard Wolfe; (3) clarification from Defendants as to "Defendant Christopher B. Martin's and Hannah Martin's Response to Plaintiffs' First Requests for Production of Documents and Things to Defendant Christopher B. Martin" (Doc. No. 37-12); (4) a privilege log from Defendants for documents withheld based on an assertion of marital privilege; (5) amended responses to the RFPs and supplementary document production over Defendants' "unsubstantiated objections"; and (6) sanctions in the form of fees and costs for bringing the motion. Doc. No. 37.

Defendants oppose.  Doc. No. 38.  For the reasons discussed herein, the motion (Doc. No. 37) will be granted, in large part, with the exception of Plaintiffs' request for sanctions and Plaintiffs' specific scheduling requests with regard to Defendants' depositions.  The Court first addresses Plaintiffs' non-compliance with Local Rule 3.01(g), followed by each of Plaintiffs' arguments in turn.

I.    Local Rule 3.01(g).

According to the motion, Plaintiffs filed the above-styled motion "in response to the Court's Endorsed Order (Doc. No. 35), with this Motion setting forth the unresolved discovery matters discussed during the parties' noncompliant meet and confer [Jan. 31, 2024] along with related deficiencies as to Defendants' discovery responses produced after the referenced meet and confer."  Doc. No. 37, at 16.[1] Further, in the motion, Plaintiffs set forth several perceived deficiencies with Defendants' discovery responses that Plaintiffs explicitly "admit . . . were not discussed in the failed meet and confer as the Responses were produced two days later," but Plaintiffs state that they were "compelled" to raise these issues in the instant motion.  *See id.* at 6 n.3.

---

[1] Pinpoint citations to the motion, related attachments, and response refer to the pagination provided by CM/ECF, rather than the internal pagination on the documents.

Plaintiffs misread the Court's Order.   *See* Doc. No. 35.   Nothing in that Order suspended the requirements of Local Rule 3.01(g) for the filing of this motion, nothing in that order "compelled" Plaintiffs to submit the motion without conducting a substantive conferral on outstanding issues not previously addressed, and indeed, the Order explicitly stated that all other requirements set forth under the Standing Order on Discovery Motions "remain in full force and effect."   *See id*. This would naturally encompass the conferral requirement.   *See* Doc. No. 19 ¶ 1.

Nonetheless, Defendants do not address Plaintiffs' failure to confer on the substantive objections in response to the motion, and choose to instead address the merits.   Doc. No. 38.   And given the fast-approaching discovery deadline, *see* Doc. No. 17, at 3, as well as the parties' inability to resolve prior issues by Court-ordered conferral, *see* Doc. Nos. 32–33, 35, the Court has elected to consider the motion on the merits despite this deficiency.   *See* Local Rule 1.01(b).   However, Plaintiffs' counsel is cautioned that future failures to comply with the Local Rules, in particular Local Rule 3.01(g), will result in the summary denial of the offending motion.   And, as discussed below, given Plaintiffs' failure to comply with Local Rule 3.01(g), and for other reasons, the Court will deny Plaintiffs' request for sanctions.   *See* Fed. R. Civ. P. 37(a)(5)(A)(i).

II.     <u>Interrogatories</u>.

Plaintiffs seek to compel Defendants to serve amended Interrogatory answers because the ones provided do not provide the signature of counsel.   Doc. No. 37, at 5; *see* Doc. Nos. 37-13 through 37-16.   In response, Defendants state that the signature page was unintentionally omitted, and Defendants agree to resend same. Doc. No. 38, at 3.   Accordingly, Defendants shall be ordered to comply by a date certain, as set forth below.

III.    <u>Defendant Christopher B. Martin's and Hannah Martin's Response (Doc. No. 37-12)</u>.

Defendants served a document titled, "Defendant Christopher B. Martin's and Hannah Martin's Response to Plaintiffs' First Requests for Production of Documents and Things to <u>Defendant Christopher B. Martin.</u>" Doc. No. 37-12. Plaintiffs say they do not know whether this is a duplicate document for the Response previously provided by Christopher B. Martin, *see* Doc. No. 37-11, or if it is intended to be the Response on behalf of Hannah Martin, and seek clarification regarding same.   Doc. No. 37, at 5.   In response, Defendants clarify that the RFPs and the Responses for both Christopher B. Martin and Hannah Martin are identical, but "[i]f the Court wishes for Defendants to resubmit responses separately, Defendant[s] would happily comply with same."   Doc. No. 38, at 4.

Upon review, because the document is indeed ambiguous, and given that Defendants have already served a Response by Christopher B. Martin, *see* Doc. No. 37-11, the Court will order Defendant Hannah Martin to provide an amended Response on her own behalf by a date certain, as set forth below.

IV.    <u>Substantive Objections</u>.

   *A.    Boilerplate Objections.*

As Plaintiffs argue, in response to several RFPs, Defendants' objections are boilerplate, and those boilerplate objections are too numerous to recount herein. *See* Doc. Nos. 37-9 through 37-12.   But, in sum, in several responses, Defendants assert objections (or variations thereof) such as:

- "Defendant objects to this Request for Production in that the Request is overbroad and not relevant nor reasonably calculated to lead to the discovery of admissible evidence in this action."   *See, e.g.*, Doc. No. 37-9, at 3.   *See also* Doc. Nos. 37-10, 37-11, 37-12.

- "Defendant objects to this Request for Production in that the Request is overbroad in scope, time and subject matter, and it seeks information which is protected under the marital privilege as the only SDG agent are Chris and Hannah Martin who are married."   *See, e.g.*, Doc. No. 37-9, at 4.   *See also* Doc. Nos. 37-10, 37-11, 37-12.

- "Defendant objects to this Request for Production in that the Request is overbroad in scope, time and subject matter, the term 'unauthorized merchandise' is objected to as it assumed facts not in evidence, and it seeks information which is protected under the marital privilege as Chris and Hannah Martin who are married."   *See, e.g.*, Doc. No. 37-9, at 5.   *See also* Doc. Nos. 37-10, 37-11, 37-12.

- "Defendant objects to this Request for Production in that the Request as far as communications is overbroad in scope, time and subject matter, the term 'unauthorized merchandise' is objected to as it assumed facts not in evidence."   *See, e.g.*, Doc. No. 37-9, at 9.   *See also* Doc. Nos. 37-10, 37-11, 37-12.

- "Defendant objects to this Request for Production in that the Request is overbroad in scope, time and subject matter and it seeks information is not limited to the issues in the Complaint, which is not relevant and will not lead to discoverable admissible information."   *See, e.g.*, Doc. No. 37-9, at 11.   *See also* Doc. Nos. 37-10, 37-11, 37-12.

- "Defendant objects to this Request for Production in that the Request is overbroad in scope, time and subject matter and it seeks information is not limited to the issues in the Complaint, which is not relevant and will not lead to discoverable admissible information.   This also seeks

confidential trade secret information." *See, e.g.*, Doc. No. 37-9, at 12. *See also* Doc. Nos. 37-10, 37-11, 37-12.

- "Vague and ambiguous.   The support is under law." *See, e.g.*, Doc. No. 37-9, at 22.   *See also* Doc. Nos. 37-10, 37-11, 37-12.

*See also* Doc. No. 37, at 6–7 n.4–6.

Notably, Defendants do not address in their response Plaintiffs' argument that the objections are boilerplate, merely arguing that they raised "proper objections."   *See* Doc. No. 38, at 5.[2]

Because Defendants fail to support these objections in the RFP responses or otherwise, their unsupported boilerplate objections are deemed waived and are otherwise overruled.   *See Siddiq v. Saudi Arabian Airlines Corp.*, No. 6:11-cv-69-Orl-19GJK, 2011 WL 6936485, at *3 (M.D. Fla. Dec. 7, 2011) ("Objections which state that a discovery request is 'vague, overly broad, or unduly burdensome' are, by themselves, meaningless, and are deemed without merit by this Court." (citation omitted)); *Asphalt Paving Sys., Inc. v. General Combustion Corp.*, No. 6:15-cv-49-Orl-41TBS, 2016 WL 3167712, at *2 (M.D. Fla. June 7, 2016) ("The Court does not consider

---

[2] The Court notes that it waived the page limitations set forth in the Standing Order on Discovery Motions for purposes of the parties' briefing, *see* Doc. No. 35, and Defendants' response is a mere six (6) pages and includes several cursory arguments without any legal authority in support.   *See* Doc. No. 38.

frivolous, conclusory, general, or boilerplate objections." (citation omitted)); Middle District Discovery (2021) § III(A)(6) ("Objections to requests for production should be specific, not generalized . . . .   Boilerplate objections such as 'the request is overly broad, unduly burdensome, and outside the scope of permissible discovery' are insufficient without a full, fair explanation particular to the facts of the case.").

     *B.*     *Marital Privilege.*

Defendants objected to several of the RFPs on the basis of marital privilege because Defendants Christopher B. Martin and Hannah Martin (the sole agents of the entity-Defendants) are married.   *See* Doc. Nos. 37-9 through 37-12.

Plaintiffs ask the Court to compel Defendants to provide a privilege log in support of Defendants' marital privilege objection, "to the extent Defendants are permitted to assert such privilege."   Doc. No. 37, at 5–6.   Plaintiffs further argue that Defendants' marital privilege objection is meritless because the documents and communications sought by the RFPs relate to the entity-Defendants, which are owned, managed, and operated by Defendants Christopher B. Martin and Hannah Martin.   *Id.* at 7–10.

In response, Defendants do not meaningfully address Plaintiffs' contentions regarding marital privilege,[3] instead stating only as follows:

_____

[3] The Court presumes that Defendants' reference to "mediation privilege" is a

> Chris and Hannah Martin are married.   They are also business partners.   As a married couple and as business partners they have had hundreds of thousands of communications relating to their business as well as their personal martial (sic.) matters and those discussions are intermingled.   Plaintiffs sought communications between them spanning ten years.   Defendants positions is that the marital privilege is a proper objection, and requiring a privilege log of these hundreds of thousands of communications across every platform sought by Plaintiff is highly burdensome, and the requests are designed to financially burden the Defendants, when frankly they already are aware of the information they are seeking . . . .

Doc. No. 38, at 4.

Defendants cite no legal authority in support for the proposition that undue burden is a proper objection to production of a privilege log,[4] to support the application of the marital privilege to the discovery requests at issue, or otherwise. *See id.*   Absent support for Defendants' position, and absent an associated

---

scrivener's error.   *See* Doc. No. 38, at 4.

[4] Even if undue burden were a proper objection, Defendants fail to adequately support that objection with evidentiary support, thus waiving that objection. *See, e.g., Eastwood Enters., LLC v. Farha*, No. 8:07-cv-1940-T-33EAJ, 2010 WL 11508180, at \*4 (M.D. Fla. Apr. 26, 2010) ("Claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome." (quoting *Bank of Mongolia v. M&P Global Fin. Servs.*, 258 F.R.D. 514, 519 (S.D. Fla. 2009))); *Weber v. Finker*, No. 3:07-mc-27-J-32MCR, 2008 WL 1771822, at \*5 (M.D. Fla. April 15, 2008) ("Respondents as the parties resisting discovery, bear the burden of establishing that responding to a discovery request will be unduly burdensome.  That burden cannot be met by a party simply claiming a response would be oppressive or expensive.  Instead, the party claiming undue burden 'must substantiate that position with detailed affidavits or other evidence[.]'" (quoting *Border Collie Rescue, Inc. v. Ryan*, No. 3:07-cv-568-J-32HTS, 2005 WL 662724, at \*2 (M.D. Fla. Mar. 15, 2005))).

production of a privilege log, the Court finds the marital privilege objection waived. *See generally Spitznagel v. R & D Italia, LLC*, No. 2:09-cv-824-FtM-29SPC, 2011 WL 940052, at *4 (M.D. Fla. Mar. 17, 2011) ("[W]hen a party does intend to withhold information, otherwise discoverable, by claiming a privilege . . . the party asserting the privilege *must* comply with Federal Rule of Civil Procedure 26 by filing a privilege log.   Failure to produce privilege log can result in waiver of the privilege." (emphasis supplied) (quoting *Anderson v. City of Naples*, No. 2:10-cv-111-FtM-36SPD, 2010 WL 4853916 (M.D. Fla. Nov. 22, 2010))).

Even if not waived, as Plaintiffs argue, it does not appear that the marital privilege would apply to the requests at issue, given that Plaintiffs are seeking business-related documents.   *See, e.g.*, Doc. No. 37-9, at 4 (Request 7: "All Documents and Communications between SDG and SDG Agents concerning the SDG Social Media, user activity, Infringing Services, and Unauthorized Merchandise."); *id.* (Request 8: "All Documents and Communications between SDG and Defendant CBM, Defendant HVM, affiliates, and sponsors in any way concerning SDG's business operations and practices."); *id.* at 5 (Request 9, relating to Defendant SDG's commercial activity); *id.* at 6 (Request 10: "All Documents and Communications involving SDG's use of the term 'Disney'"); *id.* at 7 (Request 12: "All Documents and Communications concerning the importation or attempted importation of Unauthorized Merchandise by SDG"); *id.* at 8 (Request 13:

"Documents and Communications involving SDG and Suppliers regarding Unauthorized Merchandise").   *See also* Doc. Nos. 37-10, 37-11, 37-12.

"Federal common law recognizes two forms of marital privilege: (1) the privilege against adverse spousal testimony, applicable only in criminal cases, and (2) the spousal confidential communications privilege, applicable in both criminal and civil cases."   *Cortes v. Broward Cty., Fla.*, No. 17-61156-CIV, 2018 WL 11183777, at *1 (S.D. Fla. June 8, 2018) (first citing *United States v. Singleton*, 260 F.3d 1295 (11th Cir. 2001), and *United States v. Entrekin*, 624 F.2d 597 (5th Cir. 1980), then citing *Engelmann v. National Broadcasting Co.*, 1995 WL 214500 (S.D.N.Y. 1995)).   "There are three prerequisites to assertion of the latter, 'communications privilege:' (1) a valid marriage existed at the time of the communication; (2) a communication, or expression intended to convey a message was made (as opposed to an observation about a spouse's activities directed toward third parties); and (3) the communication was made in confidence."   *Id.*

Here, besides an assertion that Defendants Christopher B. Martin and Hannah Martin are married, Defendants make no effort to demonstrate that the marital privilege would apply to the discovery sought.   *See* Doc. No. 38, at 4. Thus, Defendants' objections on marital privilege grounds will be overruled.   *See Weber v. Finker*, No. 3:07-mc-27-J-32MCR, 2008 WL 1771822, at *4 (M.D. Fla. Apr. 15, 2008) ("Respondents do not even refer to any specific documents they claim as

being covered by either the spousal or attorney-client privilege.   Instead, Respondents claim that there **may** be such documents.   This is not sufficient and the Court will not prohibit discovery on such an unsubstantiated and speculative argument." (emphasis in original)); *Hanger Orthopedic Grp., Inc. v. McMurray*, 181 F.R.D. 525, 530 (M.D. Fla. 1998) ("[S]pousal communications are not intended to be confidential if they relate to business matters—matters which are inherently subject to conveyance to third parties.").[5]

C.    *Objections to "Unauthorized Merchandise."*

Defendants object to several RFPs containing the term "Unauthorized Merchandise," stating that "it assumed facts not in evidence"   *See* Doc. Nos. 37-9 through 37-12.   *See also* Doc. No. 37, at 11 n.11.   Plaintiffs contend that the objection is meritless, given that the term "Unauthorized Merchandise" was explicitly defined in the RFPs.   Doc. No. 37, at 10–11; *see, e.g.*, Doc. No. 37-2, at 14 ¶ 36 (providing definition of "Unauthorized Merchandise").   In response, Defendants do not address this objection by name, and appear to argue generally that their objections are proper and that producing further discovery would be overly burdensome.   *See* Doc. No. 38, at 5.

---

[5] Because Defendants' marital privilege objections will be overruled, it is unnecessary for the Court to compel production of a privilege log, as Plaintiffs request. *See* Doc. No. 37, at 5–6.

Given that Defendants fail to support this objection, it will be overruled.   *See Jackson v. Geometrica, Inc.*, No. 3:04-cv-640-J-20HTS, 2006 WL 213860, at *1 (M.D. Fla. Jan. 27, 2006) (objections not addressed in response to a motion to compel are deemed abandoned).   And to the extent that Defendants argue undue burden, again, Defendants fail to sufficiently support that argument.   *See Allstate Ins. Co. v. Auto Glass Am., LLC*, No. 6:18-cv-2184-Orl-41LRH, 2020 WL 6882166, at *3 (M.D. Fla. Oct. 16, 2020) ("A party seeking to avoid discovery based on undue burden must present evidence, such as an affidavit, showing that it would be unduly burdensome to comply with the discovery request at issue." (citations omitted)).

D.    *Mouse Ear Headbands.*

Defendants object to several RFPs seeking documents or communications regarding "mouse ear headbands," stating: "'Mouse Ear Headbands' are not a subject of this litigation.   Plaintiff has no patent infringement claims at issue in 'mouse headbands' either, and therefore the request is not relevant to this action." *E.g.*, Doc. Nos. 37-9, at 9; 37-11, at 7; 37-12, at 6.   Defendants do not appear to address this objection in response to Plaintiffs' motion to compel.   *See* Doc. No. 38. And as Plaintiffs point out, "mouse ear headbands" are clearly a part of this case. *See* Doc. No. 1, at 10, 14, 17; Doc. Nos. 1-9, 1-11, 1-14, 1-17, 1-18.   So, Defendants' objection to production of documents related to "mouse ear headbands" is overruled, and Defendants will be required to produce responsive documents

- 14 -

concerning "mouse ear headbands" manufactured, imported, offered, or sold by Defendants, which have not been produced to date.[6]

     E.    *Financial and Accounting Records.*

In response to the RFPs, Defendants objected to producing financial documents related to the sale, purchase, offer for sale, and/or distribution of "Unauthorized Merchandize," or income related thereto.   *See, e.g.*, Doc. No. 37-9, at 9–12 (Requests 15–17, 19–23).   *See also* Doc. No. 37, at 13 n.13.   Plaintiffs contend that financial documents are clearly relevant to their Lanham Act and copyright infringement claims.   Doc. No. 37, at 13–14.

In response, Defendants contend that "[t]he financial information is . . . not relevant until such time that a determination is made that Defendant actually infringed on Plaintiffs' trademarks," and that the financial information requested "contains propriety trade secret information that is important to remain confidential from Plaintiff, as they are competitors."   Doc. No. 38, at 6.

Regarding relevance, the Court agrees with Plaintiffs that the financial information is relevant to the claims raised in the complaint.   *See, e.g.*, *Pro Video Instruments, LLC v. Thor Fiber, Inc.*, No. 6:18-cv-1823-Orl-31LRH, 2019 WL 13067426,

---

[6] The Court notes that in the RFP responses, Defendants did not object to all requests for documents or communications regarding "mouse ear headbands."   *See, e.g.*, Doc. No. 37-11, at 16; Doc. No. 37-12, at 13.

at *3 (M.D. Fla. Nov. 21, 2019) (citations omitted) (collecting cases and finding that the defendant's balance statements, income statements, and tax returns could provide information relevant to the damages inquiry under the Lanham Act).

To the extent that Defendants contend that there must be a finding of actual trademark infringement first, this contention is unpersuasive, as these proceedings have not been bifurcated as to liability and damages, and Defendants otherwise fail to provide a valid basis to preclude the discovery at this time. *Cf. Se. Metals Mfg. Co., Inc. v. Stampco, Inc.*, No. 3:13-cv-844-J-34MCR, 2014 WL 12611323, at *2 (M.D. Fla. July 29, 2014) (denying stay of discovery/protective order in response to motion to compel regarding sales and financial records based on an argument that the discovery should not be had until after a determination of infringement, noting that the case had not been bifurcated between infringement and damages, and good cause did not otherwise exist to delay the discovery).

Finally, insofar as Defendants argue that the financial documents contain confidential and proprietary trade secret information, Defendants fail to adequately support that assertion, with detail, evidence, or otherwise. *See* Doc. No. 38, at 6. Notably, Defendants have never moved for a protective order, *see* Fed. R. Civ. P. 26(c), and the parties of course can enter into a confidentiality agreement in this case, if they have not done so to date.

V.   <u>Depositions</u>.

The parties initially agreed to conduct Defendants' depositions on January 18–19, 2024.   Doc. No. 37, at 3; Doc. No. 38, at 2.   However, after Defendants failed to timely produce discovery in relation to Plaintiffs' October 27, 2023 requests, Plaintiffs unilaterally canceled the depositions.   Doc. No. 37, at 3–4; Doc. No. 38, at 2.   Plaintiffs requested to depose Defendants in person in the last two weeks of February; Defendants said they are not available because Defendants Christopher B. Martin and Hannah Martin will be out of the country on a pre-planned trip from February 12, 2024 through March 5, 2024.   Doc. No. 37, at 4; Doc. No. 38, at 2–3. Defendants offered to conduct the depositions remotely between February 26–29, 2024 for three hours per day, but Plaintiffs rejected the offer for failure to provide sufficient allotted time.   Doc. No. 37, at 4.   Defendants also offered dates outside of the discovery period (March 11–13, 2024) upon approval by the Court, but Plaintiffs counsel refused.   *Id.*; Doc. No. 38, at 3.

So, Plaintiffs seek an order "compelling Defendants be produced for in-person depositions in Orlando [where Defendants reside] over three days [four days if a translator is required] prior to the Mar. 4, 2024 discovery deadline."   Doc. No. 37, at 4.   Plaintiffs also ask that the depositions occur seven (7) days after Defendants produce all outstanding documents.   *Id.* at 4–5.   In response,

Defendants again request that the Court permit the depositions to go forward outside of the discovery period, between March 11–13, 2024.   Doc. No. 38, at 3.

Upon consideration, Plaintiffs' specific requests will be denied as unworkable, as it appears that the individual Defendants are now out of the country, and the Court is not inclined to order their early return to sit for depositions that could have been conducted earlier in the discovery period, had all parties been diligent.   Indeed, Plaintiffs fail to explain why they waited until almost eight (8) months after discovery began to serve their *first* sets of discovery in this case.   And notably, Plaintiffs unilaterally canceled the January 18–19, 2024 depositions based on Defendants' failure to timely produce documents, but Plaintiffs provide citation to no legal authority demonstrating that receipt of the documents was *required* prior to the depositions going forward.   And Plaintiffs do not provide an adequate explanation as to their refusal to compromise with Defendants on rescheduled deposition dates.   Doc. No. 37.

For their part, Defendants were clearly not diligent either — they do not dispute that they failed to timely comply with their discovery obligations in this case.   *See* Doc. Nos. 30–38.   And now the individual Defendants have scheduled a vacation out of the country during the final days of discovery, despite the discovery disputes outstanding, and despite being aware since March 16, 2023 of the discovery deadline in this case.   *See* Doc. No. 38; *see also* Doc. No. 17, at 3.

- 18 -

Given the record and schedule in this case, the Court is constrained to extend the discovery period until March 13, 2024 for the sole purpose of allowing Plaintiffs to conduct in person depositions of Defendants in this case.   The parties will have seven (7) days from the date of this Order to provide the Court with deposition dates.   However, if the parties proceed with in-person depositions in this extended discovery period (specifically between March 5-13, 2024), the depositions will be unavailable for summary judgment purposes – which includes responses and replies.   *See* Doc. No. 17, at 10.   Of course, Plaintiffs may alternatively take Defendants up on their offer to conduct remote depositions prior to the current discovery deadline of March 4, 2024, and any discovery obtained on or before the March 4, 2024 discovery deadline may be used by any party for summary judgment purposes.   If the parties are unable to agree on deposition dates, the Court will schedule them to occur at the courthouse, on dates and times convenient to the Court.

VI.   <u>Sanctions</u>.

For the reasons set forth above, including Plaintiffs' failure to comply with Local Rule 3.01(g) and failure to demonstrate diligence in discovery, Plaintiffs' request for sanctions in bringing the motion will be denied.   *See* Fed. R. Civ. P. 37(a)(5)(A)(i), (iii).

VII.    <u>Conclusion</u>.

For the reasons discussed herein, it is **ORDERED** as follows:

1.      Plaintiffs' Motion & Memorandum to Compel Discovery and Award Sanctions (Doc. No. 37) is **GRANTED in part** as outlined herein.

2.      Within **seven (7) days** of the date of this Order, Defendants shall serve on Plaintiffs amended Responses to Plaintiffs' First Interrogatories to include the signature of lead defense counsel—Richard C. Wolfe, Esq.

3.      Within **seven (7) days** of the date of this Order, Defendant Hannah Martin shall serve on Plaintiffs an amended Response to Plaintiffs' First Requests for Production.

4.      With regard to the RFPs, Defendants' (1) boilerplate objections; (2) objections based on marital privilege; (3) objections to "Unauthorized Merchandise"; (4) objections to production related to "mouse ear headbands"; and (5) objections to production of financial/accounting records are **OVERRULED**.   Within **seven (7) days** of the date of this Order, Defendants must produce to Plaintiffs all responsive documents to the RFPs withheld on the basis of these objections.

5.      Within **seven (7) days** of the date of this Order, lead counsel for Plaintiffs—Kimberly Harchuck, Esq.—and lead counsel for Defendants— Richard C. Wolfe, Esq.—shall meet and confer **in person or by**

**videoconference** to come to agreed-upon dates for Defendants' depositions, which depositions shall all occur on or before **March 13, 2024**.   **On or before expiration of this seven-day deadline**, the parties shall file a **joint notice** with the Court setting forth the date, time, place, and location of Defendants' depositions.   As discussed above, if the depositions proceed beyond the formal discovery completion date (March 4, 2024), the depositions will not be available to either party for summary judgment purposes.   And if the parties are unable to agree on deposition dates, the Court will schedule the depositions to occur at the courthouse, on dates and times convenient to the Court.

6.     Plaintiffs' Motion (Doc. No. 37) is **DENIED in all other respects**.

7.     **Given the deadlines in this case,** *see* **Doc. No. 17, no extensions of the deadlines herein will be granted absent exigent circumstances supported by affidavit or other competent evidence.   "Exigent circumstances" do not include Defendants Christopher B. Martin and Hannah Martin being out of the country on vacation.**

**DONE** and **ORDERED** in Orlando, Florida on February 14, 2024.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties